UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHELDON GORDON, *et al.* | : | Case No. 1:05CV2726 |
| Plaintiffs, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | **OPINION AND ORDER** |
| DAVID DADANTE, *et al.* | : | |
| Defendants. | : | |
| | : | |

Before the Court are H&R Block Financial Advisors, Inc.'s ("HRBFA") *Emergency Motion to Stay Proceedings Pending Arbitration* (Doc. 187) and Mark Dottore's (the "Receiver") *Motion to Show Cause and for Preliminary Injunction* (Doc. 206). Both motions address the propriety of a February 1, 2007 NASD arbitration claim filed by HRBFA. On March 20, 2007, the parties completed briefing on the issues, and the matter is ripe for the Court's consideration. For the reasons discussed in greater detail below, the Receiver's *Motion to Show Cause and for Preliminary Injunction* (Doc. 206) is **GRANTED in part and DENIED in part**, and HRBFA's *Emergency Motion to Stay Proceedings Pending Arbitration* (Doc. 187) is **DENIED as moot**.

I.    BACKGROUND.

The history of this case is somewhat complex; the following account is an abbreviated synopsis of certain background events that bear on the issues presented in the Receiver's and HRBFA's recent motions.

On November 21, 2005, Plaintiff Sheldon Gordon ("Gordon") filed a complaint against David Dadante ("Dadante"), IPOF, L.P., IPOF Fund, GSI, IPOF Fund II, L.P., Ferris Baker, Watts, Inc.,

Wachovia Securities, Inc., HRBFA, Pershing, LLC, and various John Doe individuals and companies. In that original complaint, Gordon alleged that Dadante, IPOF, L.P., IPOF Fund, and IPOF Fund II, L.P. raised $50 million dollars from various limited partners for a fraudulent and unregistered investment fund. According to the original Gordon complaint, Dadante first told investors that IPOF, L.P., IPOF Fund, and IPOF Fund II, L.P. (the "Fund") would invest in initial public offerings ("IPOs"), and later told investors that the Fund would trade the Dow Jones Industrials using a proprietary investment strategy. According to the original complaint, the investors were also told that they would receive guaranteed returns of between ten and twenty percent annually.

The complaint alleges that, in reality, the Fund was a Ponzi scheme replete with misrepresentations, false account statements, manipulated accounts, and improper self-dealing. The complaint claims that twenty-six million dollars of the Fund's assets were improperly distributed to certain investors as purported gains on their investment.[1] Most of the remaining assets of the Funds were used to purchase stock in Innotrac Corporation, which was neither a recent IPO nor a member of the Dow Jones Industrials. The complaint claims that Dadante and the Fund violated federal and state securities laws and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and committed common law fraud.[2] The original complaint requested, *inter alia,* that the Court freeze the assets of

---

[1] The complaint claims that the fund never realized gains and that, as in a classic Ponzi scheme, the twenty-six million dollars paid to certain investors as "returns" were simply distributions made from the initial deposits of later investors.

[2] On April 18, 2006, the Securities and Exchange Commission ("SEC") filed a civil complaint against Dadante and the Fund. On October 19, 2006, this Court entered judgment against Dadante on the SEC's complaint pursuant to the terms of a consent agreement. On January 9, 2007, this Court permitted the Receiver to settle the Fund's claims in this action against Dadante for $8.5 million, again pursuant to an agreed judgment. On March 15, 2007, Dadante was arrested pursuant to a criminal complaint alleging two counts of securities fraud.

Dadante and the Fund, prevent the destruction of relevant evidence, order an accounting, and appoint a receiver over the remaining assets of Dadante and the Fund.[3]

On November 23, 2005, the Court appointed Mark Dottore as Receiver to, *inter alia*, "collect, preserve, and protect any assets belonging to the [Funds]" to " recover . . . assets transferred fraudulently or otherwise from the [Funds]" and to investigate the size of the loss and identify the victims. On that date, the Court also enjoined the stakeholder defendants from liquidating any Fund assets they held without prior permission from the Court.[4] On December 1, 2005, the Court expanded the Receiver's authority to permit him to conduct an investigation into the assets of Dadante. On December 9, 2005, the Court froze the personal assets of Dadante and extended the appointment of the Receiver indefinitely.

HRBFA was permitted to and did participate in all proceedings conducted by the Court, both

---

[3] As noted above, the original complaint also names Ferris Baker, Watts, Inc., Wachovia Securities, Inc., H&R Block Financial Advisors, Inc., Pershing, LLC as defendants. The complaint, however, describes them as "stakeholder" defendants because they currently have charge of various accounts used by Dadante to perpetuate the alleged scheme and each claim entitlement to certain margin debt in connection therewith. That complaint does not assert any causes of action against the stakeholder defendants. Certain stakeholder defendants, including HRBFA, continue to hold Innotrac common stock on behalf of various Fund entities.

[4] Sixteen months have passed since the Court enjoined the stakeholder defendants from selling Innotrac stock and neither HRBFA nor any other stakeholder has appealed that ruling. On December 23, 2005, non-party Beverly Dadante appealed the orders enjoining the liquidation of assets, but the stakeholder defendants did not join that appeal. Mrs. Dadante's appeal of the injunction, however, should have provided notice to all parties affected by the order, including the stakeholder defendants, of the proper avenue and time to contest the injunction. Nevertheless, no stakeholder defendant pursued arbitration or sought appeal until now. In fact, rather than appeal the injunction or contest its validity in arbitration, HRBFA,as discussed below, has repeatedly sought relief from various aspects of that order from this Court. (See HRBFA's August 11, 2006 *Notice of Joinder*, Doc. 139).

3

through in-house and outside counsel.[5] On December 16, 2005, HRBFA moved the Court for an order preventing the Receiver from transferring the assets from one of the Fund accounts in which HRBFA held a security interest to an account over which HRBFA did not have control.[6] (See Doc. 29). HRBFA argued that the assets in the account were security for a margin debt accumulated by Dadante by virtue of an account agreement signed by Dadante, ostensibly on behalf of the Fund (the "Agreement" or "Account Agreement"). On June 9, 2006, HRBFA invoked the Court's jurisdiction a second time, again to address the issue of the margin debt incurred by Fund's accounts held by HRBFA. This time, HRBFA requested leave to use the cash balance in certain Fund accounts to offset the margin debt incurred on those accounts. HRBFA used the Account Agreement a second time as a basis to support its argument, stating: "HRBFA seeks only to exercise its contractual right to begin setting off against the cash equivalents." (HRBFA's *Reply in Support of Motion to Apply Cash Proceeds*, at 3) (Doc. 110). Despite substantial objection from the Receiver, on July 7, 2006, the Court granted HRBFA's motion to apply the cash balance to the margin debt.

On December 5, 2006, the Receiver filed a notice to take the deposition of William H. Salem ("Salem"), a non-party and current employee of HRBFA. HRBFA, and Advest, Inc., (Salem's former employer) filed motions to quash the deposition in which Salem eventually joined. (See Docs. 158, 159, 171, 172). On January 23, 2007, after briefing closed, the Court entered a written Order denying the motions to quash. (See Doc. 177).

---

[5] At no time during any one of several status conferences did HRBFA object to the appointment of the Receiver in this case. As discussed below, moreover, from the outset HRBFA and other stakeholder defendants have been constant negotiation with the Receiver over these issues. See *infra*, n. 10.

[6] HRBFA's *Motion to Quash and/or for Relief from Receiver's Request to Transfer Funds in Abrogation of Movant's Security Interest* (Doc. 29) was denied on September 14, 2006.

4

On February 5, 2007, HRBFA informed the Court, via its an *Emergency Motion to Stay Proceedings Pending Arbitration* (Doc. 188), that it had initiated NASD arbitration pursuant to the Account Agreement. On March 12, 2007, two days before Salem's deposition was scheduled to proceed, HRBFA filed a second *Motion to Quash* his deposition (Doc. 216), arguing that the deposition would be inappropriate until the Court ruled on HRBFA's pending motion to stay the proceedings. The Court denied HRBFA's second *Motion to Quash* the deposition of Salem on March 13, 2007.

## II. DISCUSSION.

For sixteen months HRBFA has been one of the most active litigants in this matter. Yet, after numerous appearances and nearly a dozen filings including substantive motions, discovery motions, pleadings, and other papers, and almost as many in-court appearances, HRBFA has filed an "emergency" motion to stay the matter pending resolution of its newly filed arbitration claim. HRBFA's request requires the Court to address two issues: (1) whether HRBFA has waived its right to arbitrate its dispute over the validity of the margin debt; and (2) whether the arbitration initiated by HRBFA interferes with the ability of the Receiver to collect, preserve, and protect any assets belonging to the Funds and, thus, violates this Court's order prohibiting such action. As discussed below, the Court answers both questions in the affirmative.

### A. HRBFA Has Waived The Right to Arbitrate Its Claim Against The Funds.

"The issue of arbitrability under the United States Arbitration act is a matter of federal substantive law." Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1364 (11th Cir.1995) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 402 (1967)). The Court is well aware that a waiver of the right to arbitrate may not be lightly inferred, and it is that maxim which guides the Court's analysis here. Gen. Star Nat. Ins. Co. v. Administratia

5

Asigurarilor de Stat, 289 F.3d 434, 438 (6th Cir. 2002) (affirming district court's finding that a party waived its right to arbitrate by waiting for seventeen months after service of the complaint). "But an agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon." Id. (internal quotations omitted); see also O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356-58 (6th Cir. 2003) (finding waiver of arbitration clause that was not asserted for fifteen months).

Under Howsam v. Dean Witter Reynolds. Inc., 537 U.S. 79 (2002), there is a presumption that issues of waiver and delay should be decided by an arbitrator. After Howsam, however, courts have found that the issue of waiver of an arbitration provision *due to litigation conduct* is properly determined by a judge rather than an arbitrator. Marie v. Allied Home Mort. Corp., 402 F.3d 1, 11 (1st Cir.2005) (deciding the issue of waiver, reasoning: "[w]here the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings."); Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am., 97 Fed. Appx. 462, 464 (5th Cir.2004) (finding that the issue of waiver by conduct is for the district court in situations where the alleged waiver occurred due to conduct before that court); see also Reidy v. Cyberonics, Inc., No 06cv249, 2007 WL 496679, at *3-*4 (S.D. Ohio Feb 08, 2007) (deciding the issue of waiver due to litigation conduct; citing Marie and Tristar). The rationale of these latter cases appears to be that the presumption that the issue of waiver is decided by an arbitrator (described in Howsam) is rebutted when the waiver at issue focuses solely on conduct that has taken place before the court deciding the issue. The First Circuit reasoned that, "sending [such] waiver claims to the arbitrator would be exceptionally inefficient." Marie, 402 F.3d at 13. The Court agrees that such a process would be inefficient and finds

6

that, for the case *sub judice*, it is in a superior position to construe the facts and decide the issue of waiver. Thus, even if the Howsam dicta could be extended to establish a presumption that the issue of waiver due to litigation conduct should be decided by the arbitrators, given the particular history and complexity of this case, that presumption is rebutted here.

### 1. HRBFA Has Repeatedly Submitted To This Court The Issue It Now Seeks To Arbitrate.

HRBFA's actions in this matter over the past year and a half have been wholly inconsistent with any intention to arbitrate its margin-related debt claim against the Funds. Of all the stakeholder defendants, HRBFA has been the most active in these proceedings. Indeed, fourteen months *before* filing its arbitration claim, HRBFA first requested the Court take action on the issue of the Account Agreement and related margin debt. In its December 16, 2005 *Motion to Quash and/or for Relief from Receiver's Request to Transfer Funds in Abrogation of Movant's Security Interest* ("Motion for Relief From Transfer") (Doc. 29), HRBFA argued that, under Michigan Law, *it had a security interest in the assets of the Fund account by virtue of its margin debt*.[7] In support, HRBFA claimed that Dadante was bound by, "the Investor's Account Agreement [which] permits HRBFA the authority to grant a margin loan to either account . . . and, most importantly, a general lien and security interest in all of the assets of the accounts for any margin loan granted to either account." (Motion for Relief From Transfer, at

---

[7] To be clear, these are the *exact* same Account Agreements, security interests, and margin debts that form the bases of HRBFA's recently asserted arbitration demand. (See *Emergency Motion to Stay Proceedings Pending Arbitration* (Doc. 187) ("Unable to exercise its legal right under the Investor's Account Agreement . . . to satisfy its margin maintenance call by foreclosing on its collateral, [on February 1, 2007] HRBFA initiated an NASD arbitration proceeding against [Dadante and the Fund]"); *Emergency Motion to Stay Proceedings Pending Arbitration*, Ex. E. HRBFA's February 1, 2007 NASD Arbitration Statement of Claim (the "Statement of Claim") ¶¶ 8-10 (reciting HRBFA's claim for margin debt and security interest in the Funds assets as established by the Account Agreement).

2). HRBFA attached the Account Agreement as an exhibit. HRBFA, however, made no mention of the arbitration clause in the Account Agreement, nor did HRBFA seek arbitration of the margin debt dispute at that time. Instead, HRBFA "respectfully request[ed] that this Court not permit" the Receiver to transfer the funds.[8]

Clearly, the Account Agreement was the basis for the contractual rights HRBFA asserted in its Motion for Relief From Transfer. The Motion for Relief From Transfer argued: "[r]ather than use the funds to satisfy the margin maintenance calls that were lawfully issued by HRBFA *in accordance with the terms of the Account Agreement* and NYSE Rule 431 . . . [the Receiver] requested that HRBFA transfer the funds to another broker-dealer." (Motion for Relief From Transfer, at 3-4 (emphasis added)) And HRBFA submitted the issue to the Court, stating "*[b]ecause the requested action clearly violated the terms of the Account Agreement*. . . . HRBFA notified this Court by letter . . . that it intended to discuss this issue with the Court. . . ." (Id. (emphasis added)), and was given a full opportunity to do so in person. Thus, HRBFA began litigating its disputes relating to the Account Agreement before this Court well over a year ago. In fact, not only was the dispute at issue in HRBFA's Motion for Relief From Transfer generally governed by the same Account Agreement that HRBFA now claims *requires arbitration of any and all claims* arising from it, the *specific basis* of the December 2005 motion was the exact same margin debt and security interest that HRBFA now seeks to enforce through arbitration. HRBFA, therefore, acted inconsistently with reliance on the arbitration provision both as a basis to require arbitration of *all* claims arising from the account agreement, and *specifically*

---

[8] On December 30, 2005, the Receiver opposed HRBFA's motion.

on the narrow issue of whether to arbitrate disputes relating to the margin debt.[9]

On June 9, 2005, HRBFA submitted a second dispute arising from the margin debt to the Court. In its *Motion for Leave to Apply Cash Proceeds* (the "Motion for Leave to Apply Proceeds"), HRBFA again raised the issue of its margin debt and security interest under the Account Agreement without demanding arbitration. This time, HRBFA argued that it had a "contractual right" to apply the cash proceeds from the sale of certain securities to the existing margin debt. HRBFA again claimed that the Receiver was bound by the provisions of the Account Agreement (*i.e.*, HRBFA's "contractual rights"). Nevertheless, rather than file an arbitration claim over the dispute as to the application of the proceeds, HRBFA once again chose to submit the issue to this Court. To that end, the Receiver filed a brief opposing HRBFA's motion on June 23, 2006, and HRBFA filed a Reply in support of its motion on June 30, 2006. The Receiver argued that the application of the cash to the margin debt was improper because it would cause a liquid asset of the receivership to "vaporize." HRBFA responded that there was "no reasonable basis to limit HRBFA's rights as a secured creditor, but the Receiver continues to take action inconsistent with HRBFA's absolute contractual rights in the account." (Reply in Support of Motion for Leave to Apply Proceeds, at 4). After briefing closed, and following in-court arguments from both HRBFA and the Receiver, the Court agreed with HRBFA's position and permitted HRBFA

---

[9] It was not until nearly six months later, in its May 1, 2006 Answer to the First Amended Complaint, that HRBFA first raised the issue of arbitration. It is clear to the Court, however, that HRBFA, by virtue of its specific, substantive argument concerning the margin debt and security interest issues under Michigan Law, had already waived its right to arbitrate under the Account Agreement. In any event, simply claiming to "reserve" a right to arbitrate is insufficient to preserve the right to arbitrate. See, e.g., Am. Locomotive Co. v. Gyro Process Co., 185 F.2d 316, 318-19 (6th Cir. 1951) (affirming district court's finding that a party waived its right to arbitrate despite asserting that defense in its answer). As discussed below, moreover, even assuming that HRBFA did not waive its right as of May 1, 2006, its subsequent participation in further disputes involving the same Account Agreement and margin debt unequivocally served to waive its right to arbitrate.

9

to offset the margin debt with the cash proceeds. The Court's decision reduced HRBFA's million-dollar margin-debt claim (the same claim they now seek to enforce in the recently-filed, parallel arbitration) by over half.[10]

After participating in the case for almost a year and a half, and twice litigating issues arising from the account agreement (and specifically the margin debt), the Court finds HRBFA's recent "Emergency" Motion to Stay Proceedings Pending Arbitration to be ill-conceived. Given HRBFA's statement that the: "arbitration clause is broadly drafted to require submission of 'any and all controversies or claims arising out of the relationship established by this [Account] [A]greement to arbitration . . . .'" it cannot also reasonably assert that its prior disputes with the Receiver did not arise under the account agreement. (*Emergency Motion to Stay Proceedings Pending Arbitration*) (citing Section A, Paragraph 24 of the Investor's Account Agreement.). Indeed, a dispute as to the application of proceeds from the sale of securities to an account holder's margin debt is specifically contemplated by the account agreement.[11] HRBFA's quest for relief of its margin debt in arbitration pursuant to the provisions of the Account Agreement, therefore, is improper because it has twice previously sought –

---

[10] HRBFA's Motion for Leave to Apply Proceeds also reveals additional acts inconsistent with its intention to arbitrate disputes under the Account Agreement. In that motion, for example, HRBFA stated that: "[i]n accordance with the requests of [the Receiver], HRBFA sold all of the shares of both the Rambus, Inc. and the Taser International, Inc. stock held in accounts opened at HRBFA by defendant Dadante. The proceeds from those December 14, 2005 transactions equaled $670,162.33." Thus, it demonstrates that HRBFA had been negotiating with the Receiver outside arbitration for some time in order to resolve disputes related to the margin debt. Apparently, though the Receiver and HRBFA agreed to dispose of certain equities in accounts held by HRBFA, they could not agree as to how to dispose of the proceeds. Again, however, when the parties were at loggerheads, HRBFA sought relief in this Court, not through arbitration.

[11] The account agreement specifically addresses margin debt and HRBFA's ability to sell securities of its choosing to satisfy that debt. (See Investor's Account Agreement at A19-A20.)

and once received – relief from the Court on the very issue of the margin debt.[12]

In sum, HRBFA has known from the outset of this case that it held accounts on behalf of the Funds that were subject to significant margin debt. Nevertheless, HRBFA submitted to this Court's jurisdiction initially by failing to appeal the Order restricting liquidation of the assets in the Funds accounts, or seeking to compel arbitration of that issue (which is clearly contemplated by the provision of the account agreement that permits HRBFA to "force the sale of securities or other assets in your accounts" to satisfy margin debt). Without raising the issue of arbitration, HRBFA also sought the Court's intervention to prevent the Receiver from transferring the assets in the Fund's accounts held by HRBFA to another brokerage. Later, HRBFA returned to the Court again seeking (and receiving) relief, asking the Court – over the objection of the Receiver – to permit it to apply the proceeds of the sale of certain equities to its margin debt. All of these disputes are contemplated by the Account Agreement, yet HRBFA never demanded arbitration. It would be grossly inequitable to permit HRBFA to "reserve its right to arbitrate" in a fashion that would allow it to litigate issues on the merits before the Court and resort to arbitration on those issues when the Court's decisions did not suit it (as it did

---

[12] Notably, HRBFA's NASD Statement of Claim also includes $116,617.75 in attorneys fees and costs that it expended in its "attempt to obtain full payment of the debit balance." (See *Emergency Motion to Stay Proceedings Pending Arbitration,* Ex. E). Assuming HRBFA did not spend $116,617.75 to prepare its four-page Statement of Claim, it must be including the fees expended pursuing the debit balance *in this Court*. Thus, the Statement of Claim itself recognizes that HRBFA has spent hundreds of hours litigating the merits of its margin-related claim before this Court. The Statement of Claim, moreover, also contains the same arguments and assertions of fact that HRBFA made in support of the two motions it previously submitted to this Court. (See Statement of Claim, ¶¶ 8-10).
    Furthermore, HRBFA's Opposition to the Receiver's Motion to Show Cause and for a Preliminary Injunction admits that the claim asserted in arbitration "is not novel." Stating: "[t]his Court has already recognized the [HRBFA's contractual] rights when it denied the Receiver's prior claim to stock sale proceeds and granted HRBFA's motion to permit retirement of a portion of HRBFA's loan from the sale of non-Innotrac stock." Again, this is precisely why, having already submitted its claim here, HRBFA cannot assert that claim in arbitration.

11

after the denial of its Motion to Compel approximately one week before seeking arbitration). Carbajal v. Household Bank, FSB, No. 00C0626, 2003 WL 22159473, at *10 (N.D. Ill. Sept. 18,2003) ("Participation in the litigation raises the concern of forum-shopping. If a party first demands arbitration only after it receives an adverse ruling in the lawsuit, courts inevitably will find waiver.") (citing St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., 969 F.2d 585, 589 (7th Cir. 1992) (observing that defendant filed a motion for summary judgment "while at the same time never even mentioning arbitration until after it lost its motion")).

The Court is mindful that waiver of the right to arbitrate is not to be inferred lightly, yet this is not a case where a party has *generally* participated in litigation and now seeks to compel arbitration. Rather, this is a case where the party seeking to arbitrate twice has submitted – *on its own initiative* – precisely the same claims to this Court that it now wishes to submit to arbitration, has asked for and received substantial attention from the Court *and* has received a number of orders – including beneficial ones – from this Court. If HRBFA wanted to resolve its margin-related claims through arbitration, it should have sought arbitration fourteen months ago, prior to wasting the Court's time and the Receivership's assets.

**B.     HRBFA's Arbitration Demand Has Interfered With The Receiver's Mandate**.

HRBFA's emergency motion to stay proceedings states that it filed the NASD arbitration due to its inability to "exercise its legal right under the Investor's Account Agreement and Article 9 of the Uniform Commercial Code to satisfy its margin maintenance call by foreclosing on its collateral." The only collateral held by HRBFA in the disputed account is common stock subject to an injunction that prohibits its sale or liquidation – an injunction issued by this Court nearly a year and a half ago, which HRBFA recognizes has been extended six times, but never once appealed. *(Emergency Motion to Stay*

12

*Proceedings Pending Arbitration* at 2). HRBFA's claim that it has been unable to exercise its legal right to satisfy the margin call, moreover, is not entirely accurate. The Court has already recognized HRBFA's margin debt – upon HRBFA's own motion – by permitting it to offset some $600,000 of that debt with cash assets from the receivership estate.

The Court has already found that HRBFA has waived its right to submit its margin debt claim to arbitration. The only remaining question, therefore, is whether permitting the arbitration to proceed interferes with the receivership in a manner that requires it to be enjoined. When deciding whether to issue a preliminary injunction, the Court considers and balances four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant has shown that irreparable harm would result if the injunction is not issued; (3) the possibility of substantial harm to others if the injunction is issued; and (4) whether the public interest would be served by issuing the injunction. <u>Blue Cross & Blue Shield Mut. Of Ohio v. Blue Cross & Blue Shield Assoc.</u>, 110 F.3d 318, 322 (6th Cir. 1997).

For purposes of enjoining the NASD Arbitration filed by HRBFA, success on the merits turns on whether the Receiver has shown that the arbitration improperly interferes with the receivership such that it should be enjoined. Because the Court has already decided that HRBFA has waived its right to pursue the NASD arbitration, the threshold is low and the need to address this issue is largely obviated. Simply put, because the arbitration itself is improper, the Receiver's participation in the arbitration would unnecessarily deplete the assets of the receivership and, thus, interfere with his ability to preserve the estate.

The Receiver has also shown that, without the preliminary injunction, the receivership estate faces irreparable harm. The Receiver argues that the arbitration is either: (A) at best totally

13

unnecessary, resulting in a waste of the receivership's limited assets through duplicative litigation, or (B) at worst totally improper, resulting in the liquidation of the securities and violation of the Court's order. The Court agrees with the Receiver's assessment. If the arbitration seeks to "foreclose" on the Fund's assets, as HRBFA's Emergency Motion to Stay Proceedings states, then it would harm the receivership (and violate the Court's Order) by liquidating the Innotrac stock that HRBFA is prohibited from selling. If, as HRBFA's subsequent briefs argue, the arbitration merely seeks to "establish" its claim to the assets of the receivership by virtue of the margin debt, then it is completely unnecessary. The Receiver has already acknowledged the facial validity claims of the stakeholder defendants and has expended substantial effort to confirm the scope and enforceability of those claims. More importantly, as discussed above, the Court has also acknowledged at least one aspect of HRBFA's claim *and* permitted a $600,000-plus offset of that claim.[13]

As for the third factor, the Court cannot imagine a scenario in which harm will come to others, including HRBFA, as a result of a preliminary injunction prohibiting HRBFA from arbitrating its margin-debt dispute.[14] HRBFA is already prohibited from liquidating the remaining asset it holds in accounts for the Funds. An arbitrator's decision will not change that. The best result HRBFA could

---

[13] It is notable that *none* of the other brokerage-stakeholder defendants – all of whom presumably have similar language in their account agreements with the fund – have sought to arbitrate their desires to liquidate their respective margin debts. They, like the Receiver, apparently recognize the volatile nature of the Fund's assets at issue and the importance of operating within the framework established by this Court.

[14] Indeed, permitting HRBFA to arbitrate is more likely to result in harm to others. If the arbitration were to proceed, the panel would be required to decide (or at least assume) that the Fund is a limited partnership. That question, however, is for the Court to decide, and all interested parties have not yet had the opportunity to be heard on that issue. HRBFA's insistence on pursuing an arbitration would also have the effect of requiring the Receiver to expend unnecessary Fund assets by litigating the same issues on two different fronts and, importantly, throwing further uncertainty into the market for Innotrac stock.

have hoped for, had it not waived its right to arbitrate, was a finding that the estate owed HRBFA the contested amount. As discussed, however, HRBFA cannot pursue satisfaction of that debt through the liquidation of the Innotrac stock. Thus, whether HRBFA's claim is pursued through arbitration or through the Court, its eventual satisfaction can only be achieved when the Court orders the dispersal of the assets of the receivership. In short, no matter who decides HRBFA's claim, HRBFA must await the Court's decision before it is paid.

Finally, HRBFA argues that the public interest would be ill-served if the Court enjoins the arbitration because the public has an interest in holding the parties to their contractual obligations. The Court, however, recognizes that the public also has an interest in the equitable principles of waiver. It would be unjust to allow HRBFA to rest on its arbitration clause so long as it felt the case was proceeding favorably, and then demand the right to arbitrate when it felt otherwise. Such a rule would cause the Court's decisions to be uncertain and, in essence, subject them to reversal upon an appeal to a panel of arbitrators. The public interest also favors protecting the sanctity of Court orders designed to protect the interests of *all* involved, including an entire body of inventors and numerous stakeholder defendants.

### C. HRBFA's Motion to Stay Proceedings Is Moot.

Having found that HRBFA waived its right to arbitrate the margin debt claim and enjoined the NASD arbitration, the Court need not address whether to stay the instant matter to allow that arbitration to proceed. Nevertheless, the Court finds that it would be beneficial to note certain facts that would have resulted in denial of HRBFA's Motion to Stay Pending Arbitration even if it had not found that HRBFA waived its right to arbitrate.

The basis for HRBFA's Motion to Stay proceedings is that "federal law requires the Court to

15

stay these proceedings against HRBFA based on valid agreements to arbitrate." HRBFA argues that, once a court has found that a valid arbitration agreement encompasses the dispute, all other issues concerning the dispute should be addressed in the arbitration forum. HRBFA, however, has overlooked the fact that, as yet, there are no claims asserted "against" HRBFA in this action. At this stage of the case, HRBFA is a "mere" stakeholder defendant. In short, no valid arbitration agreement encompasses the primary dispute between Sheldon Gordon *et al.* (the plaintiffs named in the first amended complaint), and David Dadante (the only non-stakeholder defendant remaining after the Court's March 20, 2006 realignment of the parties). Thus, even if the Court accepted the premise that HRBFA did not waive its right to arbitrate the dispute over the margin debt (and it does not), HRBFA could not grind the current case to a halt because it seeks to arbitrate a separate claim *it has asserted* against *some* of the plaintiffs in this case. HRBFA's claim against the Fund is only tangentially related to the claims that Gordon, *et al.* have against Dadante. Simply put, though the resolution of the margin debt issue might impact the assets over which the Receiver has charge, that alone does not provide a basis for HRBFA to hijack the entire litigation – in which no claims have been asserted by or against HRBFA[15] – pending arbitration.

In other words, either HRBFA has submitted the issue of the margin debt to the Court so often and in so many ways that it has waived its right to arbitrate that claim, or if it has not done so, resolution through arbitration can be had independently (and later) and without staying the instant matter.

Finally, on February 28, 2007, Frank Regalbuto, Jr., Frank Regalbuto, Jr. (as Parent and Next

---

[15] The Court recognizes that a subset of individual plaintiffs seek to file a Second Amended Complaint which would levy claims against HRBFA and other brokerages. The Court, however, has not yet ruled on that subset's motion to amend because, as discussed below, questions remain as to, among other things, whether those plaintiffs can assert individual claims, or whether they must proceed as members of a limited partnership.

16

Friend of A.R., Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of D.R., Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of F.R., III, Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of M.R., Minor), Frank Regalbuto, Jr. (as Parent and Next Fiend of N.R., Minor), Joseph Regalbuto, Sr., Joseph Regalbuto, Sr. (as Parent and Next Friend of J.R., Jr., Minor), Michael Regalbuto, Sr., Michael Regalbuto, Sr. (as Parent and Next Friend of D.R., Minor), Michael Regalbuto, Sr. (as Parent and Next Friend of I.R., Minor), Michael Regalbuto, Sr. (as Parent and Next Friend of M.R., Jr.), Nancy J. Amantea, Carmen P. Arrigo, Jeffrey H. Berry, George W. Bostick, IV, Steven A. Calabrese, Raquel Castro, Sheldon Gordon, Domenic D. Ciricillo, James M. Ciricillo, Linda Ciricillo, Mary Ciricillo, Horace Consolo, John Consolo, Jr, John Consolo, Sr, Joseph Consolo, Thomas Consolo, Mary D'Angelo, Nicole Delauro, Susan Russell Giordano, David Koski, Robert J. Kups, Michael LaMonica, Robert LaMonica, William LaMonica, Frank Lariccia, Jr., Donald Lombardo, Anthony Lorello, Barbara Madrigal, Rodrigo Madrigal, Jr., Charles J. Magistro, Grace McKibben, Barbara Russell Melzer, James Mitchell, Angela Molitoris, Robert A. Montanari, David E. Nager, Carmen Parise, Charles Parise, Basil Perin, Jr., Paul Perrotti, Dan Petrich, Frank Regalbuto, Frank Regalbuto, Jr. (as Parent and Next Friend of R.R., Minor), Joseph Regalbuto, Sr. (as Parent and Next Friend of N.R., Minor), Michael Regalbuto, Sr. (as Parent and Next Friend of R.R., Minor), Reggie Homes, Incorporated, Gina M. Rosson, Jane K. Russo, Cristie Sciuva, Ray Sciuva, Salvatore Sciuva, Theresa Sciuva, Albert Thomas Skinner, Betty Sustersic, Philip Sustersic, Ted Teresczuk Trust, Gae Teresczuk, Charles Valentine, Virginia Vitantonio, Carol C. Voase, Charlene M. Warner, West Asphalt Paving Company, Paulette York, and Michael Regalbuto, Sr. (collectively, the "Regalbuto Plaintiffs") filed a separate opposition to HRBFA's *Emergency Motion to Stay Proceedings Pending Arbitration*. In that motion, the Regalbuto Plaintiffs assert that they are not bound by the Account Agreement between

17

Dadante and HRBFA because they were not limited partners with Dadante. The Regalbuto Plaintiffs argue that the, "Court cannot stay proceedings . . . until it determines if these Plaintiffs have agreed to arbitrate with [HRBFA]." (Regalbuto Plaintiffs' Opposition to HRBFA's Emergency Motion to Stay Proceedings, Doc. 208). Citing Javitch v. First Union Sec., Inc., 315 F.3d 619 (6th Cir. 2003), the Regalbuto Plaintiffs argue that a district court must review whether the dispute is arbitrable prior to compelling arbitration.

Whether or not the Regalbuto Plaintiffs are correct in their claim that it is this Court who is to decide questions of arbitrability, their argument raises important issues. Chief among these issues is whether the Fund can properly be characterized as a limited partnership and, if not, what type of commercial entity the Fund is. Indeed, HRBFA's *Emergency Motion to Stay Proceedings Pending Arbitration* presumes that the Fund is a limited partnership. As the Regalbuto Plaintiffs correctly point out, however, the Court has not yet made such a determination. The legal status of the Fund is critical to many issues in the case *sub judice*, not the least of which is whether certain putative plaintiffs may, as individuals, assert claims against the current stakeholder defendants, or whether, as limited partners, their claims are inextricably linked to those of the Fund.[16]

The Court agrees with the Regalbuto Plaintiffs that it must, in any scenario, determine what type

---

[16] The proposed Second Amended Complaint asserts a number of fraud-related claims on behalf of the Regalbuto Plaintiffs, as individuals, against HRBFA and other stakeholder defendants. Largely due to the unanswered questions about the nature of the Fund's legal status, the Court has not yet determined whether the Regalbuto Plaintiffs may bring such claims. HRBFA's recent motions assume that any fraud-related claims must be asserted by the Fund (through the Receiver) as compulsory counterclaims in the NASD Arbitration. The Court, however, cannot yet make such an assumption. Javitch v. First Union Sec., Inc., 315 F.3d at 625 (citing the district court's opinion) ("Fraud on investors that damages those investors is for those investors to pursue-not the receiver. By contrast, fraud on the receivership entity that operates to its damage is for the receiver to pursue. . . .").

18

of entity the Fund is, and that a determination on that issue could effect the question of whether the claims of the individual plaintiffs are arbitrable, regardless of who answers that question. Sending the matter to arbitration prior to such a ruling could force a stakeholder defendant to litigate the counterclaims of the fund before an arbitration panel, only to face them again in this Court. Given the nature of the issues with respect to the legal status of the Fund, and the claims proposed by the Second Amended Complaint, even absent waiver, it would be unwise and inefficient to permit HRBFA to stay the entire case pending arbitration.

### III. CONCLUSION.

For the reasons discussed above, the Receiver's *Motion to Show Cause and for Preliminary Injunction* (Doc. 206) is **GRANTED in part and DENIED in part.** The arbitration initiated by HRBFA is hereby **ENJOINED** until further notice. Because the Court previously did not decide the issue of waiver, however, and because the preliminary injunction assures that HRBFA will comply with the Court's Order, the Court finds that it would be premature to hold HRBFA in contempt. Because the arbitration has been enjoined, HRBFA's *Emergency Motion to Stay Proceedings Pending Arbitration* (Doc. 187) is **DENIED** as moot.

HRBFA requests a $1,000,000 bond be posted if an injunction issues because it claims that it is due over $800,000 from the Fund. Given the freeze on the sale of the Innotrac stock, moreover, there is no greater risk to HRBFA's recovery whether it is pursued through arbitration or this Court. Accordingly, due to the circumstances of the case, the Court finds a zero ($0) bond is appropriate.

As articulated above, a number of critical determinations, including the types of claims and the proper parties to bring those claims, turn on the legal status of the Fund. Accordingly, **on April 30, 2007**, the Receiver, stakeholder defendants, plaintiffs, and any other interested party may submit

position statements addressing the legal status of the Fund and/or the agency relationships at issue.[17]

Parties who have filed a position statement on those issues may submit a single opposition brief **on May 30, 2007** containing responses to any arguments raised in the initial phase of briefing.  Parties whose arguments have been opposed may file a single, consolidated reply brief **on June 13, 2007.**

    **IT IS SO ORDERED.**

                                                          s/Kathleen M. O'Malley
                                                          **KATHLEEN McDONALD O'MALLEY**
                                                          **UNITED STATES DISTRICT JUDGE**

**Dated**:  **March 29, 2007**

---

[17] The Court recognizes that the Regalbuto Plaintiffs address the Fund's legal status in their Opposition to HRBFA's Emergency Motion to Stay Proceedings, and that HRBFA's Reply to that brief also argues the point.  Given the importance of the issue, however, the Court believes it requires a full briefing schedule that permits all interested parties to be heard on the issue.