UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHELDON GORDON, *et al.*, | : | |
| | : | Case No. 1:05CV2726 |
| Plaintiffs, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| | : | |
| DAVID DADANTE *et al.*, | : | <u>ORDER</u> |
| | : | |
| Defendants. | : | |

**I.    BACKGROUND.**

This matter has a long and difficult history, characterized by acrimony and distrust among all the parties. The following summary is written to provide a more complete context to the Court's disposition, with this Order, of a number of pending motions.

On November 21, 2005, Sheldon Gordon filed a complaint against David Dadante ("Dadante") and various investment funds managed by Dadante. In sum, the complaint alleged that Dadante solicited approximately $50 million from a group of prominent members of the community to form investment funds under the names IPOF, L.P., IPOF Fund, GSI, IPOF Fund II, L.P. (the "Fund"). The complaint claims that Dadante told investors, among other things, that he was working with a major Wall Street investment bank; that the Fund had returned over 25% per year; that their investments were secure; that the Fund would purchase stock from initial public offerings ("IPOs"); and, later, that the Fund would use a proprietary trading strategy to generate a guaranteed return.

According to the complaint, neither Dadante nor the Fund fulfilled any of these promises. Instead, the complaint and subsequent filings claim that the Fund was a Ponzi scheme used by

Dadante to bilk his friends and acquaintances out of millions of dollars. To facilitate his scheme, Dadante allegedly made repeated misrepresentations, provided false account statements, and manipulated accounts, all while enriching himself by improperly self-dealing. The complaint alleges that $26 million of the Fund's assets were improperly distributed to certain investors as purported "gains" on their investment. The complaint claims, however, that the Fund never realized any gains and that the $26 million paid to certain investors as "returns" were simply distributions made from the initial deposits of later investors.[1] The original complaint requested, *inter alia,* that the Court freeze the assets of Dadante and the Fund, prevent the destruction of relevant evidence, order an accounting, and appoint a receiver over the remaining assets of Dadante and the Fund.

When Gordon filed his complaint, he simultaneously asked that the case be sealed so as to avoid a devaluation of the Fund assets through a sudden and unrestrained market response to the filing of the complaint, and filed an *Emergency Motion To Appoint a Receiver* (Doc. 5). In his emergency motion, Gordon stated that "that time is of the essence" and entreated the Court to appoint a receiver lest his investment "be rendered worthless." Id. Gordon argued that a receiver was absolutely necessary "to prevent fraud" and "preserve the assets [of the Fund] from irreparable loss through mismanagement." Id. (citations omitted). To that end, Gordon requested Mark Dottore (the "Receiver"), by name, to be the receiver of the assets of the Fund. Gordon represented that he

---

[1] Since the filing of the complaint, it has become common knowledge that most of the remaining assets of the Fund were used to purchase several million shares of common stock in Innotrac Corporation ("Innotrac"). Innotrac, however, was not a recent IPO during the life of the Fund. Instead, Innotrac is a relatively small business services company. Innotrac stock currently hovers between $2 and $3 per share and trades, on average, fewer than 10,000 shares per day. The relevance of these metrics will be explained in greater detail below, but in short, the Fund owned well over $10 million dollars of an illiquid stock that often traded less than $20,000 worth of shares per day.

had shared critical information regarding the allegations with Mr. Dottore and that Gordon and his counsel were familiar with Mr. Dottore's expertise and experience in similar receivership actions. The Court agreed with Gordon's characterization of the urgency of the circumstances, temporarily sealed the case, and appointed Mark Dottore as Receiver to, *inter alia*, "collect, preserve, and protect any assets belonging to the [Funds]" to " recover . . . assets transferred fraudulently or otherwise from the [Funds]" and to investigate the size of the loss and identify the victims.

Shortly after the appointment of the Receiver, it became known to the Court that the primary asset of the Receivership, the Innotrac stock held in accounts at various brokerage "stakeholder" defendants, was encumbered by several million dollars of margin debt. It was also clear that many of those margin debts exceeded certain parameters and that the accounts faced imminent margin calls. Given the trading history of Innotrac stock, it seemed clear that the immediate, disorderly liquidation of roughly one-third of the outstanding common stock of a small company would prove disastrous for Fund investors, rendering the stock (their sole asset) virtually worthless. Such action would have had serious consequences for the investors, leaving the Fund with massive margin debts and no assets. Accordingly, on December 1, 2005, the Court enjoined various "stakeholder" defendants from liquidating any Fund assets they held without prior permission from the Court. To date, the injunction has prevented liquidation of the Innotrac stock by virtue of the margin calls. Also on December 1, 2005, the Court expanded the Receiver's authority to permit him to conduct an investigation into the assets of Dadante. On December 9, 2005, the Court froze the personal assets of Dadante and extended the appointment of the Receiver indefinitely. On April 5, 2006, after receiving leave from the Court, an amended complaint was filed on behalf of Gordon, adding all the investors in the Fund.

At some point during the summer of 2006, for reasons unbeknownst to the Court, the relationship among the investors deteriorated, and divisions emerged among the investors who previously had spoken with one voice. On July 17, 2006, one group of Fund investors, including Cleveland Construction, Inc., Small Brothers Partnership, James W. Small, James Small, Jr., James W. Small (as Parent and Next Friend of N.S., Minor), Jon D. Small, Mark T. Small, and Timothy R. Small (collectively, the "Small Plaintiffs"), filed a complaint against two other investors, Frank and Michael Regalbuto. (See Small v. Regalbuto, No. 06-cv-1721)  The complaint alleged, *inter alia*, that Frank and Michael Regalbuto actively recruited Fund investors, made representations about the Fund which they knew or had reason to know were not true, and, thus, owed fiduciary duties to the Small Plaintiffs who invested millions at the urging of Frank and Michael Regalbuto. The complaint further alleged that Frank and Michael Regalbuto paid themselves millions of dollars by misappropriating the Small Plaintiffs' investments. Frank and Michael Regalbuto filed an answer largely denying the allegations, and a third-party complaint bringing claims against the stakeholder defendants, various professionals, and Innotrac Corporation, alleging, in sum, that they bear responsibility for the fraud.

By the beginning of 2007, the parties had splintered further. One group of investors comprised of Frank Regalbuto, Jr., Frank Regalbuto, Jr. (as Parent and Next Friend of A.R., Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of D.R., Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of F.R., III, Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of M.R., Minor), Frank Regalbuto, Jr. (as Parent and Next Friend of N.R., Minor), Joseph Regalbuto, Sr., Joseph Regalbuto, Sr. (as Parent and Next Friend of J.R., Jr., Minor), Michael Regalbuto, Sr., Michael Regalbuto, Sr. (as Parent and Next Friend of D.R., Minor), Michael Regalbuto, Sr. (as Parent and

4

Next Friend of I.R., Minor), Michael Regalbuto, Sr. (as Parent and Next Friend of M.R., Jr.), Nancy J. Amantea, Carmen P. Arrigo, Jeffrey H. Berry, George W. Bostick, IV, Steven A. Calabrese, Raquel Castro, Sheldon Gordon, Domenic D. Ciricillo, James M. Ciricillo, Linda Ciricillo, Mary Ciricillo, Horace Consolo, John Consolo, Jr., John Consolo, Sr., Joseph Consolo, Thomas Consolo, Mary D'Angelo, Nicole Delauro, Susan Russell Giordano, David Koski, Robert J. Kups, Michael LaMonica, Robert LaMonica, William LaMonica, Frank Lariccia, Jr., Donald Lombardo, Anthony Lorello, Barbara Madrigal, Rodrigo Madrigal, Jr., Charles J. Magistro, Grace McKibben, Barbara Russell Melzer, James Mitchell, Angela Molitoris, Robert A. Montanari, David E. Nager, Carmen Parise, Charles Parise, Basil Perin, Jr., Paul Perrotti, Dan Petrich, Frank Regalbuto, Frank Regalbuto, Jr. (as Parent and Next Friend of R.R., Minor), Joseph Regalbuto, Sr. (as Parent and Next Friend of N.R., Minor), Michael Regalbuto, Sr. (as Parent and Next Friend of R.R., Minor), Reggie Homes, Inc., Gina M. Rosson, Jane K. Russo, Cristie Sciuva, Ray Sciuva, Salvatore Sciuva, Theresa Sciuva, Albert Thomas Skinner, Betty Sustersic, Philip Sustersic, Ted Teresczuk Trust, Gae Teresczuk, Charles Valentine, Virginia Vitantonio, Carol C. Voase, Charlene M. Warner, West Asphalt Paving Company, Paulette York, and Michael Regalbuto, Sr. (collectively, the "Regalbuto Plaintiffs") moved to amend the complaint in the case *sub judice* to assert claims against the stakeholder defendants, various professionals, and Innotrac Corporation, similar to those alleged in the third-party complaint in Small v. Regalbuto.[2]

The Regalbuto Plaintiffs also began to express dissatisfaction with the Receiver. Despite

---

[2] On April 19, 2007, apparently displeased and impatient with the status of the claims asserted in their proposed second amended complaint in the case *sub judice*, and their third-party claims in Small v. Regalbuto, the Regalbuto Plaintiffs filed a third suit, this time in state court. (See Regalbuto v. Dottore, Case No. CV 07 622036 (Cuyahoga Cty. C.P. Apr. 19, 2007)). Whether the suit violates an Order of the Court is discussed *infra*).

joining in the lawsuit that was initiated *with a request* that a receiver be appointed, the Regalbuto Plaintiffs now believe that the Receiver, who stepped into the shoes of the general partner, is unnecessary, or improper in the absence of a limited partnership, and have voiced their intention to pursue individual claims against the brokerages under the theory that the Fund was not a limited partnership.[3] A second group of plaintiffs, the "Small Plaintiffs," has not joined in the Regalbuto Plaintiffs' pursuits, and has contested the assertion that the Fund is not a limited partnership.[4] Another "group" of investors is comprised of various individual *pro se* investors who have largely (and patiently) remained silent thus far. It also bears noting that the interested parties to the case also include the Fund (as represented by the Receivership), Dadante, members of Dadante's family, several brokerages, the United States of America,[5] the mortgagor of Dadante's residence, and, if the

---

[3] In a previous hearing, the Court advised certain Regalbuto Plaintiffs to consider carefully the wisdom of this position. Though apparently the Court's comments were perceived as an "attack," that was not the Court's intention. Rather, the Court wished to express concern that disunity among the investors could lead to rapid depletion of the remaining assets of the receivership, and, more importantly, felt it necessary to explain that a possible, serious consequence of disclaiming limited partnership status could be a declaration that the investors operated as general partnership in which all partners could be individually liable for the debts of the partnership, including the massive margin debts mentioned above. Again, the Court offers no opinion as to the merits of this argument, and parties are free to advocate the merits of any position they reasonably believe to be valid. Given the number of unrepresented parties in this matter, and the number of times parties have changed representation and allegiances, the Court was duty-bound to raise the issue in open court.

[4] On March 29, 2007, the Court set a briefing schedule to address whether the Fund is a limited partnership. Though briefing on the issue has not yet closed, the Small Plaintiffs, the Receiver, and one stakeholder brokerage have filed position statements arguing that the Fund is a limited partnership. The Regalbuto Plaintiffs have filed a position statement arguing that the Fund is not a limited partnership.

[5] On March 15, 2007, the Government filed a criminal complaint against David A. Dadante. Many of the issues of liability in that criminal case and the case *sub judice* share common underpinnings.

6

second amended complaint is accepted, Innotrac, a number of lawyers, law firms, and additional brokers.

It is against this tide of discord and competing interests that the Court strains to achieve orderly progress in the case. To that end, in resolution of several pending motions and issues raised by the parties, the Court finds and orders as follows:

## II.     The Regalbuto Plaintiffs' *Motion to Set Aside Judgment* (Doc. 174) is <u>DENIED.</u>

On December 19, 2006, Mark Dottore (the "Receiver") filed a motion for authority to resolve IPOF, L.P., IPOF II, L.P., GSI and/or GSGE's (the "Fund") claims against David Dadante ("Dadante") for $8,500,000. The Receiver's *Motion for Authority to Resolve Claims Against David Dadante* (Doc. 166) was unopposed.[6] After the motion was granted and the settlement approved, the Regalbuto Plaintiffs moved for relief from judgment pursuant to Federal Rule of Procedure 60(b)(6).

Prior to filing his motion, the Receiver conducted an investigation of Dadante's assets. The investigation revealed that most of Dadante's assets were in the form of personal and real property. The investigation further revealed that much of Dadante's property was ill-maintained, improperly insured, and at risk. After examining Dadante's assets, the Receiver determined that a settlement of $8,500,000 represented an amount that was many times greater than the sum of all of Dadante's current assets plus any amount he foreseeably could earn for decades to come. Rather than hold out for a larger, token judgment and risk the depletion or loss of Dadante's limited assets, while

---

[6]     The Receiver filed a corrected motion incorporating an exhibit that was inadvertently omitted from the original motion. The additional exhibits, however, do not provide the basis for the Regalbuto Plaintiffs' motion for relief.

simultaneously expending substantial sums to pursue a likely unenforceable judgment,[7] the Receiver exercised his judgment and offered to settle the claims of the Fund. The Receiver and the Court both recognized that the $8,500,000 settlement likely was less than the potential loss suffered by the Fund as a result of Dadante's alleged conduct. The Court, nevertheless, agreed with the Receiver's judgment that the settlement was in the best interest of the Fund, and approved it.

The Regalbuto Plaintiffs argue that the settlement is deficient and improperly prejudices their rights because it treats them as limited partners in the Fund. As to the amount of the settlement, the Court has already discussed (above and in a previous order) the rationale for permitting an $8,500,000 settlement. The Regalbuto Plaintiffs argument that the settlement is deficient, therefore, is not well-taken.[8] With respect to the Regalbuto Plaintiffs argument that the settlement inappropriately treats them as limited partners, the Court is not persuaded that relief from judgment under Rule 60(b)(6) is appropriate at this time.

It is well-established that application of subsection six of Rule 60(b) is warranted: "only in exceptional or extraordinary circumstances, which are not addressed by the first five numbered clauses of the Rule" to be applied, "as a means to achieve substantial justice when something more

---

[7] Without a settlement, the value of Dadante's primary asset, his home, would be depleted rapidly by virtue of its mortgage, insurance, and maintenance costs. In addition, the holder of Dadante's mortgage was seeking to foreclose on the house – an action which would certainly reduce the value of the home through additional fees and a possible sheriff's sale.

[8] The Regalbuto Plaintiffs suggest that the settlement is deficient because "should Dadante become wealthy again he should be made to pay the full amount of the damages he has caused not an arbitrary figure set by the Receiver." (See Doc. 174 at 3). In a subsequent filing, however, the Regalbuto Plaintiffs state "Dadante, however, does not have anywhere near the resources necessary to make his victims whole." (See Response to Motion to Show Cause, Doc. 261 at 2). Apparently, therefore, the Regalbuto Plaintiffs have come to recognize that which the Court and the Receiver have understood for months.

8

than one of the grounds contained in Rule 60(b)'s first five clauses is present." Olle v. Henry & Wright Corp., 910 F.2d 357, 365 (6th Cir. 1990) (internal quotations omitted). Because the Court has not yet decided the legal status of the Fund, "extraordinary circumstances" do not yet exist. In the event the Court finds that the Fund is something other than a limited partnership, however, relief under Rule 60(b)(6) may be proper. Accordingly, the Regalbuto Plantiffs' *Motion to Set Aside Judgment* (Doc. 174) is **DENIED** subject to renewal, if warranted, subsequent to a determination of the legal status of the Fund.

**III.  The Regalbuto Plaintiffs'** *Motion for Leave to File a Second Amended Complaint* **(Doc. 176) is TERMED.**

The Regalbuto Plaintiffs proposed second amended complaint purports to assert individual claims against various brokerages for, *inter alia*, fraud, malpractice, and securities laws violations. On March 29, 2007 the Court set a briefing schedule to determine whether the Fund was a limited partnership. In short, because the Court has not yet determined the legal status of the Fund, it would be inappropriate to accept the second amended complaint as the claims stated therein may be the property of the Fund. Accordingly, the Regalbuto Plaintiffs' *Motion for Leave to File a Second Amended Complaint* (Doc. 174) is **TERMED**, subject to renewal, if appropriate, pending the Court's resolution of the legal status of the Fund.

**IV.  The Regalbuto Plaintiffs'** *Motion to Terminate the Receivership or to Remove Receiver and for an Accounting* **(Doc. 179) is GRANTED in part and DENIED in part.**

In their *Motion to Terminate the Receivership or to Remove Receiver and for an Accounting,* the Regalbuto Plaintiffs argue that the receivership should be terminated or that Mark Dottore should be removed as Receiver because: (a) Mr. Dottore "has exacerbated [a] schism that developed between the investors"; (b) the Receiver's job is largely completed because the assets have been

9

identified and secured;[9] (c) the Receiver does not have the authority to pursue the claims of the Fund because it was not a limited partnership.

The Regalbuto Plaintiffs are correct that there appears to be a schism among the investors and other interested parties in this matter.[10]  The Court, however, does not see this as a reason to terminate the Receivership.  To the contrary, a Receivership is particularly important where a large group of plaintiffs have interests that are partially aligned or overlapping, but cannot agree as to how to best protect those interests.  The confusion and conflict is further evident in certain filings of the Regalbuto Plaintiffs.  By virtue of the proposed second amended complaint and other filings, for example, counsel for the Regalbuto Plaintiffs appears to assert that the Regalbuto Plaintiffs' interests are aligned.  In a recent filing, also on behalf of the entire group of Regalbuto Plaintiffs, however, Frank Regalbuto individually claims that he has a priority claim to separate, special payments from the assets of the Receivership that could exceed millions of dollars.[11]  (See Regalbuto Plaintiffs'

---

[9] This argument warrants little response as one of the critical functions of a Receiver is to fairly and impartially determine entitlements to, and oversee disbursement of, the assets of the estate.  Simply put, this phase has not yet commenced.

[10] The disagreement is evidenced, in part, by the vigorous opposition to the Regalbuto Plaintiffs' *Motion to Terminate the Receivership or to Remove Receiver and for an Accounting*. (See, e.g., February 5, 2007, Cleveland Construction, Inc., Small Brothers Partnership, James W. Small, James Small, Jr., James W. Small (as Parent and Next Friend of N.S., Minor), Jon D. Small, Mark T. Small, and Timothy R. Small (collectively, the "Small Plaintiffs") *Opposition to the Motion to Terminate the Receivership* (Doc. 188); February 13, 2007, Ferris, Baker, Watts, Inc. ("Ferris Baker") *Response [in opposition] to the Motion to Terminate the Receivership* (Doc. 195)).

[11] Frank Regalbuto has claimed priority to a recovery of the construction costs of the Dadante home in Gates Mills, a prior payoff of another, prior Dadante residence, and funds advanced to pay legal expenses incurred during the early stages of this matter.  Oddly, Regalbuto's filing appears to claim that, though he was paid once for the Gates Mills home, he should be paid a second time because the original payments were comprised of Dadante's proceeds from the instant fraud.  If anything, this admission seems to raise the issue of whether

*Motion for an Accounting* (Doc. 263), at 3-4). This provides yet another basis for the Court's belief that placing control of the assets and potential claims in the hands of an experienced, disinterested third party is, for the moment, in the best interest of all involved.

Further, given the allegations against Frank and Michael Regalbuto (the "Regalbutos") in a related case (No. 06 CV 1721) brought by another group of investors, and the Regalbuto's admissions in their Answer, the Court must exercise caution when determining whether to permit Frank and Michael Regalbuto to exercise control over the disputed assets or claims. In that suit, another group of Fund investors has accused the Regalbutos of, *inter alia*, misappropriating funds. In response, Frank and Michael Regalbuto have admitted that they authorized several hundred thousand dollars of "bonus" payments from the Fund to themselves. While the Regalbutos Answer claims that they believed they were legitimately entitled to the payments, they still nonetheless concede that they received funds that were not made available to the other investors. Whether the Regalbutos were entitled to the monies is still an unresolved issue, and the Court expresses no opinion here as to the veracity of any of the allegations in that suit. At a minimum, however, the Complaint and Answer in that suit further evince a level of distrust and/or confusion among the investors as to various parties' entitlements to the Funds' assets.

As for the Regalbuto Plaintiffs' contention that the Receivership does not have the authority to act on behalf of the Fund because it is not a limited partnership, as stated above, that remains an open question. Even if the Court finds that the Fund is not a general or limited partnership, however, the assets in question would still be in the Receiver's charge as the assets would simply be those of

---

Mr. Regalbuto was entitled to any payment, or whether monies received during the construction of the Gates Mills home should be restored to the Receivership estate.

11

a sole-proprietorship or the personal accounts of David Dadante, against which numerous creditors would have the right to assert claims exceeding the value of those assets. The Court's October 6, 2006 Order grants the Receiver authority to "step into Dadante shoes" as to the "personal estate of Dadante, including any real property, *and the estates of every corporation, partnership trust and/or other entity which is directly or indirectly owned by or under the direct or indirect control of Dadante*. Thus, whether the Funds are limited partnerships, sole proprietorships, or merely, as the Regalbuto Plaintiffs argue, deposit accounts, it is the Receiver, and not the Regalbuto Plaintiffs, who will control them. In short, it is not, as the Regalbuto Plaintiffs seem to suggest, a foregone conclusion that the Receivership is void if the Fund is other than a limited partnership. The determination of the legal status of the Fund has serious implications with respect to the claims both asserted and proposed in this matter, but it does not, standing alone, determine the legitimacy of the Receivership.

For the foregoing reasons, the Regalbuto Plaintiffs' *Motion to Terminate the Receivership or to Remove Receiver and for an Accounting* (Doc. 179) is **GRANTED in part[12] and DENIED in part.**

**V.    The Regalbuto Plaintiffs' *Motion to Substitute Party* (Doc. 232 [corrected Doc. 238]) is DENIED.**

In their *Motion to Substitute Party*, the Regalbuto Plaintiffs claim that a now-defunct entity called Coffee King should be substituted for the Fund. In support, the Regalbuto Plaintiffs imply that the Fund has no right or interest to protect and argue that Frank Regalbuto should be permitted

---

[12] Prior to the resolution of this motion, the Regalbuto Plaintiffs filed a second Motion for an Accounting (Doc. 263) . As discussed below, portions of that second motion are well-taken. See *infra*, sectionVII.

12

to control the litigation because, by virtue of a power-of-attorney, he is the "defacto president" of Coffee King.[13] The exhibits attached to the original complaint and a subsequent affidavit by an agent of the Federal Bureau of Investigation ("FBI") in a related criminal case – all of which discuss the use of the Fund as a vehicle for fraud – tell a decidedly different story. In short, there is simply nothing to support the Regalbuto Plaintiffs' contention that Coffee King possesses legally cognizable interests such that it should be *substituted*[14] for the Fund.

Accordingly, for the reasons discussed in the Receiver's and the Small Plaintiffs' oppositions to the motion to substitute party (Docs. 250 & 253, respectively), not the least of which is that Coffee King's Articles of Incorporation were cancelled by the State of Ohio and it does not have the capacity to maintain claims, the Regalbuto Plaintiffs' *Motion to Substitute Party* (Doc. 232 [corrected Doc. 238]) is **DENIED.**

**VI.    The Receiver's *Motion to Show Cause* (Doc. 256) is DENIED.**

At issue in the Receiver's Motion to Show Cause is whether a lawsuit that the Regalbuto Plaintiffs filed against the Receiver and his agents in the Court of Common Pleas for Cuyahoga County, Ohio, Case No. CV 07 622036, entitled Frank Regalbuto, Jr. et al. v. Mark Dottore, et al. (The "State Action")[15] violated an Order of the Court. The Order reads:

---

[13] The Court observes that no supporting documents are attached to Mr. Regalbuto's affidavit.

[14] Even if the Regalbuto plaintiffs were correct, and David Dadante used Coffee King as *another* vehicle to perpetrate a fraud on the investors, the appropriate (and logical) course of action would be to *add* Coffee King to the list of entities over which the receiver has control, not to substitute Coffee King for the Fund.

[15] The State Action alleges, *inter alia*, that the Receiver and his agents have, by virtue of the acts taken on behalf of the Receivership, willfully breached their fiduciary duties to the Regalbuto Plaintiffs.

13

> "Accordingly, except for a breach of trust committed in knowing bad faith or via willful misconduct, all persons, corporations, and entities – and especially the parties in this case . . . - hereby are, jointly and severally, **ENJOINED** and **STAYED**, absent express written consent from the Court (which may be obtained only upon written request to the Court outlining the nature of the alleged breach of trust in knowing bad faith or willful misconduct), from commencing any action at law or suit ... in any Court or to prosecute any claim, or to execute or issue or cause the execution or issuance out of any Court of any writ, process, summons, attachment or subpoena against [the Receiver and his agents]."

(December 1, 2005 Order, Doc. 16).

The Regalbuto Plaintiffs argue that the December 1, 2005 order prohibiting suit permits a suit alleging bad faith or willful misconduct, which is what their state complaint did. In the alternative, the Regalbuto Plaintiffs argue that the Order is ambiguous, and that they should not be held in contempt for violation of the order resulting from their misreading of it. The Court disagrees.

The Order was designed to bar *all suits* except, *upon the express written consent of the Court*, those alleging bad faith or willful misconduct. To read the Order any other way renders the parenthetical – which specifically addresses suits alleging bad faith and willful misconduct – entirely meaningless. Simply stated, the Court believes that reasonable attorneys do not read a court's Orders so as to render portions of them meaningless. Thus, the Court is disappointed that it must now clarify this Order for at least two reasons. First, it is clear to the Court – as recognized by other parties to this litigation – that the Order is only ambiguous when its plain meaning is tortured. Second, the Court feels certain that any responsible attorney who believed the Order to be ambiguous would have, indeed should have, consulted the Court to request clarification *prior* to filing a suit if there was *any question* as to whether the suit might violate the Order and imperil his client.

Further, the Court is particularly troubled by the Regalbuto Plaintiffs' willingness to force

14

the Receiver to needlessly expend hundreds of hours responding to unauthorized filings. Indeed, the Court observes that the Regalbuto Plaintiffs, though it may not be their conscious intent, often have impeded the orderly progress of the Receivership and caused the depletion of its assets by the filing of ill-informed pleadings and/or taking insupportable positions.[16] The Court finds this particularly unfortunate, and ironic, given the Regalbuto Plaintiffs' claim that their desire is "to recoup the investors' losses." The Court sympathizes with <u>all</u> the victims of this massive fraud, and the Regalbuto Plaintiffs may be assured that recouping the investors' losses is also the paramount goal of the Court.

Ultimately, the Court believes that the filing of the State Action by the Regalbuto Plaintiffs was the result of a combination of frustration and, apparently, extremely imprudent legal advice. The Court, therefore, chooses not to visit a further punishment upon a group of people who have already been so egregiously wronged, and instead recommends that the Regalbuto Plaintiffs exercise patience and employ discretion in future matters before the Court. The Regalbuto Plaintiffs and their counsel, however, should take heed that they may not attempt to circumvent the decisions of this Court simply because they disagree with them.

---

[16] Many of these filings have proven just short of frivolous, yet required countless hours of professional time to resolve. Indeed, in several filings, one of the Regalbuto Plaintiffs took the position that he should be permitted to enter Dadante's home at will. Though that position later was abandoned, it required responsive filings, a hearing, and orders from the Court. The Court and the Receiver, thus, were required to expend a significant amount of resources addressing the issue. Shortly before the issuance of this Order, moreover, another of the Regalbuto Plaintiffs filed a notice of encroachment seeking to impede the sale of the Dadante home by claiming that it encroached on his property. (<u>See</u> Doc. 264). The irony of this filing is particularly palpable because yet another of the Regalbuto Plaintiffs (indeed a family member of the party who claims encroachment) *apparently built the encroaching driveway and both houses*. (<u>See</u> Doc. 263). It appears, however, that the resolution of this issue could require further expenditures if the involvement of surveyors or attorneys is required to engage in negotiations or to file suit to correct any possible negligence in the construction of the driveway.

In sum, though the terms of the order are clear, the Court, out of an abundance of caution and sympathy, will give the benefit of the doubt to the Regalbuto Plaintiffs and declines to sanction them for contempt at this time.  Instead, the Court takes this opportunity to clarify its order and forewarn counsel for the Regalbuto Plaintiffs, and all parties to this litigation, that they should consider more carefully whether future filings comport with the requirements of Federal Rule of Civil Procedure 11, are vexatious, or run afoul of this Courts orders.  A second measure of leniency will not be forthcoming.  Indeed, any future violation of this Court's orders will be met with the severest of sanctions.  The Court simply will not tolerate the continued, unnecessary depletion of the assets of the Receivership.  To that end, the Court will utilize every mechanism available under the Federal Rules, statutes, and the Court's inherent power to ensure that any of the Receivership assets depleted in responding to unwarranted, vexatious, frivolous, or otherwise inappropriate filings be restored at the expense of the offending party.

Accordingly, the Court modifies a portion of its December 1, 2005 order to read as follows:

> Accordingly, all persons, corporations and entities – and especially the parties in this case, the limited partners of the Fund and their respective attorneys, servants, agents, employees – hereby are, jointly and severally, ENJOINED and STAYED, absent express written permission from the Court (which may be obtained only for an action asserting breach of trust committed in knowing bad faith or via willful misconduct, <u>and</u> with written leave of this Court obtained after outlining the nature of the alleged breach of trust in knowing bad faith or willful misconduct), from commencing or continuing any action at law or suit or proceeding in equity in any Court or to prosecute, or continue to prosecute, any claim, or to execute or issue or cause the execution or issuance out of any Court of any writ, process, summons, attachment or subpoena, against:
> • Mark E. Dottore as an individual;
> • Mark E. Dottore as the Receiver;
> • any entity in which Mark E. Dottore holds an ownership interest; and
> • any attorney, advisor, officer, agent, employee, consultant, or other representative retained or employed by the Receiver.

The remainder of the December 1, 2005 order remains in effect as originally written.

For the foregoing reasons the Receiver's *Motion to Show Cause* (Doc. 256) is **DENIED**.

**VII.    The Regalbuto Plaintiffs'** ***Motion for an Accounting*** **(Doc. 263) is GRANTED in part and DENIED in part.**

At the outset, the Court reminds the Regalbuto Plaintiffs that the Receiver has been authorized by the Court to take actions that the Court has approved and found to be in the best interest of the investors. The Court remains convinced that, but for the Receivership, all fund assets would have been depleted long ago. The Court notes, further, that there are costs inherent in any Receivership, it takes money to recoup money – in this case, thousands have been expended in the effort to recover millions in assets and to mitigate millions more in debt. Nevertheless, to avoid any implication that the information is unavailable or incomplete, the Court orders the following with respect to the Regalbuto Plaintiffs' request for an accounting:

Within thirty (30) days of the date of this order, the Receiver shall prepare a summary accounting of the Receivership. The summary shall include, at a minimum: (a) the expenditures to professionals including the Receiver, by type, for each month of the Receivership; (b) a list of the assets of the Receivership since its inception; (c) a monthly summary of the expenditures made to maintain the Dadante home (including taxes and insurance); and (d) a monthly summary of other expenses, receipts, dispositions, and disbursements from the Receivership.

To the extent the Regalbuto Plaintiffs' current motion requests specific explanations or verifications of the decisions of the Receiver, those requests are denied as moot.[17]

---

[17] Those requests either focus on the settlement between the Fund and Dadante, or the manner in which the valuation of Dadante's home was established. With respect to the former, the challenge to the settlement has been denied as discussed above. As to the valuation of the home, the Court is holding a hearing on this same date to address that question.

17

The Regalbuto Plaintiffs' motion also raises questions about the ability of Regalbuto Plaintiffs' current counsel to represent the entire group without breaching his ethical obligations. In a recent filing, Frank Regalbuto claimed that he has a priority entitlement to separate, special payments from the assets of the Receivership that could exceed millions of dollars. (See Regalbuto Plaintiffs' *Motion for an Accounting* (Doc. 263), at 3-4) ("[The Receiver] need reimburse Frank Regalbuto and Reggie Homes from the proceeds of any sale of the Dadante house."). Because he appears to believe he first should be paid a substantial portion of the assets of the Receivership (*i.e.*, Dadante's house) prior to any distributions to other plaintiffs, Frank Regalbuto is at odds with the remaining investors. The implications of that claim appear clear: absent some exception or circumstance of which this Court is unaware, it seems impossible for Frank Regalbuto to share representation with the remaining plaintiffs.

### VIII. The Small Plaintiffs' Emergency Motion For an Immediate Order Enjoining State Court Action and for Contempt Sanctions (Doc. 265) is <u>DENIED.</u>

The Small Plaintiffs appear to be correct in their belief that the Regalbuto Plaintiffs are acting in a way that is recklessly depleting the assets of the Receivership. Pursuant to the terms of the clarified order described above, which enjoins the continued prosecution of the State Action, the injunctive relief requested in the Small Plaintiffs' *Emergency Motion to For an Immediate Order Enjoining State Court Action and for Contempt Sanctions* has been provided. Accordingly, that portion of the Small's motion that requests a specific injunction addressing only the recently-filed state court action is denied as moot.[18] Further, for the reasons described above in section VI, the Small's Motion for Contempt Sanctions is not, at this time, well-taken. Accordingly the Small

---

[18] The Court has also been informed that, subsequent to the filing of the Smalls' motion, the State Action was voluntarily dismissed.

18

Plaintiffs' *Emergency Motion to For an Immediate Order Enjoining State Court Action and for Contempt Sanctions* (Doc. 265) is **DENIED.**

### IX. The Regalbuto Plaintiffs' *Motion For Relief From Judgment* (Doc. 269) is **DENIED.**

On May 17, 2007, the Regalbuto Plaintiffs' filed a Motion for Relief From Judgment asking the Court to vacate its July 7, 2006 order permitting defendant H & R Block Financial Services to apply certain funds to its margin debt. The Regalbuto Plaintiffs argue that some or all of the funds applied to that margin debt belong to the Regalbuto Plaintiffs who are not limited partners of IPOF and, thus, not liable for that margin debt.

As discussed above, the application of subsection six of Rule 60(b) is warranted: "only in exceptional or extraordinary circumstances, which are not addressed by the first five numbered clauses of the Rule" to be applied, "as a means to achieve substantial justice when something more than one of the grounds contained in Rule 60(b)'s first five clauses is present." Olle, 910 F.2d at 365 (internal quotations omitted). For the same reasons outlined above, therefore, if the Court finds that the Fund is something other than a limited partnership, relief under Rule 60(b)(6) may be proper. See *infra* Section II. At this time, however, the Regalbuto Plantiffs' *Motion For Relief From Judgment* (Doc. 269) is **DENIED** subject to renewal, if warranted, after determination of the legal status of the Fund.[19]

### X. CONCLUSION.

For the foregoing reasons: the Regalbuto Plaintiffs' Motions *to Set Aside Judgment* (Doc.

---

[19] On June 4, 2007, HRBFA filed a *Motion to Stay Adjudication of Motion for Relief from Judgment* (Doc. 279) suggesting that the Court postpone ruling on the Regalbuto Plaintiffs' motion until it determines the legal status of the Fund and/or HRBFA's appeal to the Sixth Circuit, relating to its waiver of the right to arbitrate, is adjudicated. Having disposed of the Regalbuto Plaintiffs' motion above, HRBFA's Motion to Stay is **DENIED** as moot.

174); *to Substitute Party* (Doc. 232 [corrected Doc. 238]); and *For Relief From Judgment* (Doc. 269) are **DENIED.** The Regalbuto Plaintiffs' *Motion for Leave to File a Second Amended Complaint* (Doc. 176) is **TERMED.** The Regalbuto Plaintiffs' *Motion to Terminate the Receivership or to Remove Receiver and for an Accounting* (Doc. 179), and *Motion for an Accounting* (Doc. 263) are **GRANTED in part and DENIED in part**.

The Receiver's *Motion to Show Cause* (Doc. 256) is **DENIED.** The Small Plaintiffs' *Emergency Motion to For an Immediate Order Enjoining State Court Action and for Contempt Sanctions* (Doc. 265) is **DENIED.** HRBFA's *Motion to Stay Adjudication of Motion for Relief from Judgment* (Doc. 279) is **DENIED**.

Further, Mr. Cheselka shall **SHOW CAUSE** in writing within fifteen (15) days of this Order why he should not be barred from further representation of plaintiffs other than Frank Regalbuto given the obvious conflict of interest which arises from his continuing to do so.

**IT IS SO ORDERED.**

                                              s/Kathleen M. O'Malley
                                              **KATHLEEN McDONALD O'MALLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: June 6, 2007**