UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SHELDON GORDON, et al.,** | : | |
| | : | **Case No. 1:05CV2726** |
| **Plaintiffs,** | : | |
| | : | **Judge Kathleen M. O'Malley** |
| **v.** | : | |
| | : | |
| **DAVID DADANTE et al.,** | : | **ORDER** |
| | : | |
| **Defendants.** | : | |

Before the Court are numerous motions filed by various parties to this matter.  The pending motions are discussed below in chronological order, and in resolution of those motions the Court finds and orders as follows:

**I.     The Regalbuto Plaintiffs' Motion for Further Accounting (Doc. 294).**

On July 6, 2007, Mark Dottore (the "Receiver") filed an accounting summarizing the expenses incurred by the Receivership estate since its inception.  Shortly thereafter, the Regalbuto Plaintiffs, unsatisfied with the detail of the Receiver's accounting, filed a Motion for Further Accounting (Doc. 294).  On December 17, 2007, the Regalbuto Plaintiffs' filed a *Supplemental Statement In Support of Motion of Regalbuto Plaintiffs Motion For A More Complete Accounting* (Doc. 329) in which they specified the eight categories of information they are seeking in their further accounting.

On January 2, 2008, the Receiver filed a response to the Regalbuto Plaintiffs' supplemental statement.  In his attached response, the Receiver states that he has complied with the Local Rules and the Orders of this Court.  The Receiver states that he has made numerous attempts to reach

counsel for the Regalbuto Plaintiffs, to resolve issues relating to the production of the various categories of information that the Regalbuto Plaintiffs seek.  According to the Receiver, however, counsel for the Regalbuto Plaintiffs has been unreachable.  The Receiver, moreover, also claims that he provided all non-privileged documents to counsel for the Regalbuto Plaintiffs in September of 2007 – after the request for further accounting was made.  The Receiver explains that, since the production of those documents, counsel for the Regalbuto Plaintiffs has not requested any additional information from the Receiver, nor communicated with the Receiver in any way.  Finally, the Receiver objects to counsel for the Regalbuto Plaintiffs' propensity to resort immediately to costly motion practice rather than resolving disputes by communicating directly with the Receiver.[1]

---

[1]   The Court has had first-hand experience with counsel for the Regalbuto Plaintiffs' communication practices, and understands how difficult informal efforts to resolve matters with him can be.  On numerous occasions, counsel for the Regalbuto Plaintiffs also has been completely unreachable by the Court.  During the summer of 2007, for example, a dispute arose with respect to certain easements on the Dadante residence.  The Court was asked, *by counsel for the Regalbuto Plaintiffs and directly by certain of the Regalbuto Plaintiffs*, to schedule a mediation between representatives of the Regalbuto Plaintiffs and the prospective purchaser of the property.  Given the pending sale, the mediation was described as time-sensitive and urgent.  After agreeing quickly to conduct the requested mediation, the Court contacted the parties to discuss the time and substance of the mediation.  Counsel for the purchaser agreed to several dates and times over the course of the relevant period, and the Court blocked off time for the requested mediation – reasoning that counsel for the Regalbuto Plaintiffs, who requested the urgent mediation, would be anxious and flexible.  Each time, however, counsel for the Regalbuto Plaintiffs failed even to return the calls of the Court, much less to agree on a mediation date.  Despite repeated offers of its time by the Court, the mediation did not take place and, the Court understands, the parties are now involved in litigation over those issues in state court.

Later, the Court contacted counsel for the Regalbuto Plaintiffs to advise him that one of his clients routinely was sending inappropriate *ex parte* missives to the Court.  The Court instructed counsel for the Regalbuto Plaintiffs to advise his client of the fact that the Court was not authorized to review such communications and to cause the communications to cease or be properly served on all parties.  The *ex parte* submissions (via fax), however, continue to this day (though they are immediately destroyed without review, as is the Court's obligation).  To this date, counsel for the Regalbuto Plaintiffs has not responded to numerous messages from the Court, making his statements relating to the progress of this case (see n.2) both ironic and frustrating.

It appears to the Court that the Motion for Further Accounting largely arises from the communication difficulties described above.  Apparently, the Receiver believed that the documents provided subsequent to the Regalbuto Plaintiffs' motion for a more detailed accounting contained all the information necessary to satisfy the Regalbuto Plaintiffs' requests.  The Regalbuto Plaintiffs' recent supplemental statement, however, asserts that the documents have not provided the information they desire.  In their supplemental statement, the Regalbuto Plaintiffs specify the following categories of information they still seek:  (1) the dates on which the Receiver retained professionals to represent the Receivership; (2) the hourly rates (or other bases for compensation) charged by those professionals; (3) itemized bills (or an accounting of time) for all services provided by those professionals; (4) the hourly rates (or other bases for compensation) charged by Mark Dottore and others in his direct employ; (5) itemized bills (or an accounting of time) for services provided by Mark Dottore and others he employs; and (6) all documents relating to applications to the Court for the fees and expenses of the Receivership.

The Regalbuto Plaintiffs' requests for specific categories of data are largely unopposed and the Court finds them generally to be reasonable.  Accordingly, the Receiver shall file, by March 15, 2008 a more detailed accounting providing the information described above from the inception of the Receivership through December 31, 2007.  To the extent that descriptions found in the itemized bills would reveal information that is subject to the attorney-client privilege, or would reveal counsel for the Receiver's work product, those portions of the descriptions should be redacted.  Further, any description that reveals information that, by virtue of Mark Dottore's status as a major shareholder

---

To the extent minor disputes can be resolved through communication as opposed to motion practice, costly to all involved, the Court encourages counsel for the Regalbuto Plaintiffs to redouble his efforts to collaborate with the Receiver to work through problems *and to respond to efforts to contact him*.

of Innotrac Corp., may not be publicly disclosed, shall be similarly redacted.  The Regalbuto Plaintiffs' *Motion for Further Accounting* (Doc. 294), therefore, is **<u>GRANTED</u>**, to the extent articulated above.  Finally, in an effort to avoid future motion practice on this issue (*see infra* section IV), the Court orders that the above described accounting be updated every ninety days (*e.g.,* an updated accounting through March 31, 2008 shall be filed on or before April 30, 2008; an updated accounting through June 30, 2008 shall be filed on or before July 31, 2008, and so on, as necessary).

## II.    The Regalbuto Plaintiffs' Motion for Conference/Hearing (Doc. 295)

In their Motion for Conference/Hearing, the Regalbuto Plaintiffs' ask the Court for a hearing to address the following issues: (1) the Court's perception of the Regalbuto Plaintiffs; (2) the Receiver's purported failure to provide the Regalbuto Plaintiffs with certain information; (3) the proper custodian of assets; and (4) the status of the litigation.  Though previously the Court has been receptive to holding hearings in this matter, the Court finds that a hearing on the *specific* issues raised by the Regalbuto Plaintiffs is unnecessary.  Instead, the Court will address herein the issues raised by the Regalbuto Plaintiffs in an effort to avoid the further expenditure of resources and time.

First, the Court understands that the Regalbuto Plaintiffs, as limited partners of the IPOF Fund, are victims of Dadante's fraud to be afforded the same status and empathy as all of Dadante's victims.  It is true that the Court previously: (1) cautioned former counsel for Frank Regalbuto in a related case (*Small v. Regalbuto*, No 06-1721) to consider carefully the implications that his arguments could have on the remaining, unrepresented participants of the IPOF Fund; and (2) questioned former counsel for Frank Regalbuto in relation to a sweeping conflict waiver he sought to procure from parties who, at the time, were unrepresented.  These admonitions, however, were intended to: (1) alert the unrepresented parties present in the courtroom to the possibility that their

4

interests may not (indeed, likely *are* not) completely aligned; and (2) suggest that they each strongly consider seeking independent, outside advice before taking legal positions that could jeopardize their future rights.  The Court wanted to explain to all of the parties that, at the time of the hearing, Sam Zingale, who represented Frank Regalbuto, was not their attorney, yet he was asking them to sign waivers of liability with respect to potential claims and conflicts of interest, and was taking legal positions that could dramatically impact their rights.  Mr. Zingale was subsequently dismissed by Mr. Regalbuto and, indeed, *never* entered an appearance on behalf of any other parties in this matter.  The Court's warnings contained strong language in an effort to explain the obvious risks of the situation.  A careful reading of the transcript of the hearing makes plain that the Court's criticisms were directed at counsel for the Regalbuto Plaintiffs, and that, despite the belief held by certain plaintiffs, the Court did not single out any individual plaintiffs for criticism.  When the Court stated: "I don't understand how Mr. Regalbuto, who is supposed to have a fiduciary relationship, not with the people joining here but every single one of the other investors, wants to put himself at risk for a lawsuit for breach of that very fiduciary relationship" it was plainly questioning the wisdom of the advice he was receiving and voicing its concerns in an effort to caution Mr. Regalbuto, and not chastise him.  (*See Small v. Regalbuto*, 06cv1721, Nov. 14, 2006 Hr'g Tr. 18:18-18:23).

Simply stated, at the hearing, the Court saw a group of unrepresented plaintiffs, many of whom had just lost their life savings as a result of financial deals made on a "handshake" basis in which they were inadequately protected and unrepresented.  The Court then heard counsel explain that many of these same unrepresented plaintiffs intended to take positions, waive rights, and enter into further agreements in an effort to recover the monies stolen from them -- *again without independent representation* -- and was concerned and, frankly, stunned.  In any event, at this

5

juncture, it is clear that the Court's recommendation that the various parties in this case seek independent counsel, whose sole interest would be to protect their *respective individual rights*, has gone unheeded. The formerly unrepresented plaintiffs were within their rights to ignore the Court's warnings. The Court makes no assumptions about that group of victims who now comprise the Regalbuto Plaintiffs, and has long since moved on to other issues.

Additionally, though the Court has warned current counsel for the Regalbuto Plaintiffs to tread carefully when filing lawsuits and motions, these warnings are unrelated to the Court's previous cautionary remarks. They relate, instead, to current counsel's obligation to comply with all relevant rules of procedure and to avoid running afoul of, or ignoring, this Court's orders. Indeed, the Court has yet to sanction counsel for the Regalbuto Plaintiffs for any violation of its Orders or the Rules, despite filings which would have justified such sanctions. Instead, the Court has heretofore excused the filing of voluminous and unnecessary motions, notices, and other papers,[2] some of which are replete with open attacks on the other parties and, at times, not-so-thinly veiled criticisms of the Court's own reasoning, competence, and impartiality. As noted above, moreover, the Court has also ignored certain Regalbuto Plaintiffs' blatant and improper attempts to address the Court *ex parte*. Recognizing the tensions and frustrations among the litigants, the Court, instead, has given the parties wide latitude to air their grievances and voice their arguments. In sum, though the level of tension among the parties remains high, the Court has taken great pains to address all matters raised by the Regalbuto Plaintiffs with the same care and impartiality it address all matters before it, in this or in any litigation. Simply put, there is no need to hold a hearing on this issue.

---

[2] In this Order, for example, the Court is forced to address no fewer than three motions which essentially relate to discovery matters and, accordingly, should have been resolved through procedures other than motion practice. *See* Local Rule Civ. P. 37.1.

As for the second issue the Regalbuto Plaintiffs wish to address – information they seek from the Receiver -- the Court finds it to be moot.  In section one, above, the Court addressed the Regalbuto Plaintiffs' request for further information *vis-à-vis* an accounting and found it to be well-taken from the briefs alone.

Third, the Regalbuto Plaintiffs assert that they wish to be heard on the issue of the proper custodian for the assets of the Receivership.  The parties have extensively briefed this issue and, in this Court's recent Order (*see* Doc. 332), the issue of the legal status of the IPOF Fund and the proper custodian of the assets of all the entities Dadante used to facilitate his fraud were resolved.  As such, there is no reason to hold a hearing on the issue.

Finally, the Regalbuto Plaintiffs wish to address the status of the litigation.  Again, the Regalbuto Plaintiffs' frustration with the pace of this matter has not gone unnoticed.  It is also well-established that the Regalbuto Plaintiffs believe that the Receiver should liquidate all the holdings of the Receivership (especially the shares of Innotrac held by the Fund) and bring suit against various parties.  Their displeasure with the Receiver and their objections to his actions have been well-chronicled in numerous papers and during previous hearings.  A primary focus of the Regalbuto Plaintiffs' ire appears to be the approximately $1,000,000 cost of the Receivership to date, which they view as excessive.  First, as noted below, a significant number of the non-Regalbuto plaintiffs believe that much of that cost has been incurred in response to what they believe are unnecessary filings by counsel for the Regalbuto Plaintiffs.  In addition, the alternative litigation strategy which has been proposed by the Regalbuto Plaintiffs, moreover, is not without substantial costs.  They and their counsel have urges the Court to hire outside (and in some cases out-of-state) attorneys who have indicated a willingness to pursue litigation on behalf of the IPOF Fund and its limited partners

7

on a contingency fee basis.  The contingency fees proposed have ranged from twenty-five to forty percent of the value of any recovery achieved (over and above expenses, of course).  The Court observes that the recently proposed settlement between Ferris Baker Watts, Inc., and the IPOF Fund has a value in excess of $16,000,000.  For illustrative purposes, if that settlement were approved, a twenty-five percent contingency fee would have cost the IPOF Fund participants over $4,000,000, and a forty percent fee would have cost the plaintiffs over $6,400,000 – *for that settlement alone*.  Expenses for experts, travel, discovery, etc. would also have to be paid by the IPOF Fund out of that settlement, thus further increasing the costs of a litigation-route to resolve disputes with third parties.  In short, virtually any contingency arrangement would have resulted in fees that were many times those of the Receiver.[3]

---

[3]     Contingency-fee litigation is not only an expensive route, moreover, it is a slow and arduous one, with risks.  Had litigation been commenced by the counsel proposed by the Regalbuto Plaintiffs, recoveries, if any, would likely still be years away and then subject to lengthy appeals (the Court notes, by way of example, that the interlocutory appeal in this matter, filed over nine months ago, has yet to be heard, much less ruled upon).

For the foregoing reasons, the Court does not believe that a costly oral hearing will serve any practical purpose or add to the debate over the parties' litigation strategy in a meaningful way.[4]  The Regalbuto Plaintiffs *Motion for Conference/Hearing* (Doc. 295) is **DENIED.**

### III.   The Small Plaintiffs' Motion for Specified Accounting (Doc. 296)

In their motion for a specified accounting, the Small Plaintiffs ask the Court to require the Receiver to itemize the expenses that the Receivership has incurred in addressing the Regalbuto Plaintiffs voluminous filings.  The point of this motion is clear, the Small Plaintiffs object to the Regalbuto Plaintiffs' litigious methods, and believe that those methods are costing *all* of the IPOF Fund participants dearly by driving up the expenses of the Receivership estate.

Indeed, it appears to the Court that, in many instances, there are often more efficient and cost-effective ways for the Regalbuto Plaintiffs to resolve the differences they have with the Receiver over the management of the estate.  The irony of the Smalls' motion, however, is that it asks the Receiver to undertake an analysis that will surely be costly and result in *additional* expense to the

---

[4]      In several papers before the Court, the Regalbuto Plaintiffs bemoan the progress of this matter.  This is somewhat vexing to the Court for a number of reasons.  First, given the nature of the Receiver's charge – *i.e.,* to assess and attempt to marshal the assets of the estate – much of the "progress" in the matter must necessarily occur outside the docket, in the form of investigations, accountings, and negotiations.  Surely, counsel for the Regalbuto Plaintiffs must understand this reality.  Second, since the largest single asset of the estate is publicly-traded stock, both the IPOF Fund and the Receiver are required by law to refrain from public disclosures of any discussions which could affect the value of those shares.  Again, all counsel who choose to participate in this proceeding, including counsel for the Regalbuto Plaintffs, have an obligation to understand the legal niceties involved in it, especially those relating to the securities laws.  Finally, to the extent there has been a delay in the movement of this Court's docket, the most significant source of that delay has been the parties' aggressive motion practice.  To that end, the Court observes that the parties have filed over forty separate motions and over one hundred other papers within the past 12 months – many of which were completely unnecessary – though virtually every motion (excluding those addressed here) has been resolved.  The motions addressed here, moreover, are largely a product of the ceaseless quarrelling among the parties and were assigned a low priority due to their redundancy, triviality, and, in some instances, frivolity.

estate, *and* may further drive a wedge between the participants of the IPOF Fund.  The Court is

loathe to order an expensive exercise with little faith in the substantive purpose to be served.

Perhaps, upon review of the accounting the Court now orders, the  parties will be better able to:  (1)

gauge the effect the intramural litigation is having on the duration and cost of this matter; (2)

appreciate the dollar-for-dollar impact of motion practice on their eventual recovery; and (3) evaluate

their litigation strategy accordingly.

In any event, the Court believes that the Receiver's more detailed accounting, as discussed

above, will furnish the information that the Smalls seek, permitting the parties to analyze further the

Receiver's expenditures at their own expense.  *The Small Plaintiffs' Motion for Specified Accounting*

(Doc. 296), therefore, is **DENIED**.

**IV.    The Regalbuto Plaintiffs' Motion to Remove Receiver for Cause and for Receiver to Show Cause Why He Should Not Be Held in Contempt (Doc. 299) and The Regalbuto Plaintiffs' Motion to Show Cause Why the Receiver Should Not Be Held in Contempt (Doc. 315).**

In their motion to remove the Receiver for cause and to require the Receiver to show cause

why he should not be held in contempt, the Regalbuto Plaintiffs argue that: (1) the Receiver should

be removed for his failure to comply with Local Rule 66.1; and (2) the Receiver should be held in

contempt for violating the Court's December 1, 2005 Order.  For the reasons discussed below, the

Court finds these arguments to be without merit.

In support of their argument that the Receiver should be removed for cause, the Regalbuto

Plaintiffs suggest that Local Rule 66.1 only permits a receiver to be compensated upon "notice to

creditors and other persons in interest as the Court may direct."  The Regalbuto Plaintiffs contend

10

that, because they are persons in interest but were not notified of the Receiver's compensation, the Receiver is in violation of the Rule.

It is undisputed that the Regalbuto Plaintiffs, as limited partners, have an interest in this matter. The statute, however, does not require the Receiver to notify all interested parties, it only requires a receiver to notify creditors and persons in interest *as the Court directs*. Because the Court previously has not directed such notice, the Receiver is not in violation of Local Rule 66.1(c).

The Court reminds the Regalbuto Plaintiffs that at the time the initial directives of the Receivership were established, the dynamic among the parties was decidedly different. Indeed, at the time of his appointment, Mr. Dottore – *the individual chosen by the Plaintiffs to be the Receiver* – had not previously handled or been involved in *any* matters before this Court. Prior to his appointment, the Court discussed the receivership and Mr. Dottore's experience with the parties' then-current counsel, and ultimately agreed that Mr. Dottore was a satisfactory choice. Since his appointment, the Receiver has been thorough and diligent in a difficult task that has exposed himself to myriad attacks, personally and professionally. Despite these attacks, the Receiver has given the Court no reason to question his single-minded desire to maximize the assets in the Receivership estate and, thus, maximize the possible return to all his investors. The actions and efforts of all of the Receiver's agents have evidenced a similar level of competence and dedication on their part. Under such circumstances, given the two-year investment in the knowledge base of the Receiver and his agents, the Court finds that all parties would be ill-served by appointing a new receiver at this time.

With respect to the Receiver's reporting requirements, the Court notes that, since the inception of the Receivership, the Receiver has submitted his expenses directly to the Court for

11

approval.  Though the Regalbuto Plaintiffs imply otherwise, there was no sinister motive behind not requiring the docketing of monthly reports or individualized notice.  Indeed, it was the plaintiffs' own counsel who submitted a proposed order to the Court suggesting the procedure to be employed – *i.e.*, the submission of requests for interim reimbursement to the Court *only*.  The reason for this procedure was to guard against improper public disclosures of information which could impact the share price of the Innotrac stock, an understandable *and* laudable goal.  For fourteen months, thereafter, no party objected to the Receivership, to the mechanism established to fund it, or to the absence of additional reporting or information.  The Court believed that this was the product of: (1) the fact that the court-appointed Receiver was chosen by the Plaintiffs; (2) the Court's understanding, by virtue of its previous Orders, that information in the hands of the Receiver was available to interested parties at their expense; and (3) the parties' desire to minimize the expenditure of resources.

In early 2007, however, it became clear to the Court that there was a schism among the limited partners of the IPOF Fund.  One faction, the Regalbuto Plaintiffs, expressed considerable dissatisfaction with the Receiver and demanded, among other things, an accounting.  The Court, therefore, ordered an accounting (which the Receiver did not oppose).  More recently, as discussed above, the Regalbuto Plaintiffs have asked the Court to require the Receiver to provide greater detail in its accounting.  Again, though certain statements in the Regalbuto Plaintiffs' motion were disputed, the request for an accounting itself was not.  As discussed above, the Court has ordered an additional accounting.  In brief, given the foregoing, the Court finds that the Receiver has responded as directed to the Regalbuto Plaintiffs' requests for an accounting, reported in accordance with the Court's directives and, thus, has not violated Local Rule 66.1.

The second prong of the Regalbuto Plaintiffs' *Motion to Remove Receiver for Cause and for Receiver to Show Cause Why He Should Not Be Held in Contempt* (Doc. 299) argues that the Receiver should be required to show cause why he should not be held in contempt for violating the Court's previous Order. Specifically, the Regalbuto Plaintiffs argue that the Receiver has not provided certain documents to their counsel as required by the Court's December 1, 2005 Order. In their [second] *Motion to Show Cause Why the Receiver Should Not Be Held in Contempt* (Doc. 315) the Regalbuto Plaintiffs, without waiting for a ruling from the Court, recite the same argument they made in their August 1, 2007 *Motion to Remove Receiver for Cause and for Receiver to Show Cause Why He Should Not Be Held in Contempt* (Doc. 299).

In response to the [second] *Motion to Show Cause Why the Receiver Should Not Be Held in Contempt* (Doc. 315), the Receiver submitted an opposition brief with an attached affidavit chronicling the attempts that litigation counsel for the Receiver made in an effort to provide the requested discovery. The affidavit states that the Receiver's counsel telephoned counsel for the Regalbuto Plaintiffs, numerous times over several months, but that counsel for the Regalbuto Plaintiffs failed to return even one telephone call. Eventually, according to the Receiver's counsel, documents were sent to counsel for the Regalbuto Plaintiffs' office in September, 2007. Since that time, there has been no further communication regarding the issue. This affidavit is uncontradicted and, as noted above, the Court has experienced similar difficulty first-hand when attempting to contact counsel for the Regalbuto Plaintiffs over a similar period.

The communication difficulties present in the case have made arduous the resolution of even the simplest issues. The second motion to show cause illustrates the point clearly. A logical, and uncontradicted explanation is that the Regalbuto Plaintiffs requested certain documents, via letter,

13

in mid-June, 2007; (*See* Doc. 315, Ex. A); counsel for the Receiver attempted to contact counsel for the Regalbuto Plaintiffs to discuss the request in June 2007 and July 2007, but the calls were not returned (*See* Doc. 321, Ex. A); and, subsequently, the Receiver left it to counsel for the Regalbuto Plaintiffs to pursue the request. Due to this communication barrier, the Regalbuto Plaintiffs filed their August 1, 2007 *Motion to Remove Receiver for Cause and for Receiver to Show Cause Why He Should Not Be Held in Contempt* (Doc. 299). The Receiver tried to contact counsel for the Regalbuto Plaintiffs again in August 2007, likely in response to the motion, but those calls, similarly, were unreturned. Once again, the Receiver, having failed to reach counsel for the Regalbuto Plaintiffs after repeated attempts (*See* Doc. 321, Ex. A), left it to the, to date, unresponsive counsel to pursue his request.[5] Subsequently, rather than return any of the Receiver's calls or contact the Court, on September 11, 2007, the Regalbuto Plaintiffs filed their [second] *Motion to Show Cause Why the Receiver Should Not Be Held in Contempt* (Doc. 315). On September 19, 2007, the Receiver filed an opposition brief (Doc. 321) recounting the numerous attempts he made to reach counsel for the Regalbuto Plaintiffs and stating that, on September 14, 2007, he sent some documents to counsel for the Regalbuto Plaintiffs. Since that time, no additional briefs have been filed on the issue and no further requests have been made to the Receiver.

The problem in resolving these motions is that: (1) it is unclear what information the Regalbuto Plaintiffs sought; (2) it is unclear what information the Receiver provided; and (3) it is unclear whether the issue is moot. At the outset, the Court notes that it takes the Receiver's account

---

[5] At this point a better course of action likely would have been to respond to the Regalbuto Plaintiffs' motion via an opposition brief. Given the circumstances, however, the Court cannot find fault with the Receiver's counsel's attempt to resolve the issue without the aid of the Court, and it certainly does not believe that such efforts, in lieu of litigating the issue, warrant a finding of contempt.

14

of the situation to be true because it appears in the last brief filed on the issue (Doc. 321) and contains an uncontroverted affidavit.  To the extent the Regalbuto Plaintiffs disagreed with those accounts, they should have followed the time-honored tradition of filing a Reply brief.  If, however, the Regalbuto Plaintiffs received the documents they required, the Court believes it would have been in the best interests of all concerned for them to have filed a document indicating that fact, or withdrawn their motion.[6]  From the Court's perspective, the entire account displays a vivid, familiar picture of the miscommunication and misinterpretation that has characterized this matter for the past nine months.  *In the future, the parties are advised that Court will treat such motions as it would a discovery-related dispute.*  Under the local rules, the parties involved should first attempt to resolve the issue *cooperatively and among themselves;* if the parties reach an impasse,[7] they should seek the Court's guidance via telephone, letter, and motion – in that sequence.  *See* Local Rule Civ. P. 37.1.

Based on the preceding discussion, the Court finds that there is an insufficient basis upon which to find that the Receiver violated either the Local Rules or the Court's orders.  For the foregoing reasons, the Regalbuto Plaintiffs' *Motion to Remove Receiver for Cause and for Receiver*

---

[6]     Indeed, the Court observes that the Regalbuto Plaintiffs' most recent filing, a January 9, 2008 Reply to Receiver's Response to the Supplemental Statement of the Regalbuto Plaintiffs (Doc. 333) suggests that any remaining dispute has nothing to do with a "document request."  This suggests that much of the basis for the motion to remove the Receiver has been mooted by a recent exchange of information.  To the extent this is accurate, the Court feels that, rather than relying on the Court to piece together the overlapping, redundant submissions in an effort decipher the current impasse between the parties, all concerned would be better served by restraining the urge to compound their submissions to the Court with unnecessary supplemental papers, and notifying the Court of the resolution of the issue.

[7]     In this regard, all counsel are instructed that they have an obligation under the Local Rules to communicate with each other; failure to return phone calls is itself a violation of those rules and, in the future, will *alone* justify denial of motions addressing issues which could and should have been addressed first on an informal basis.

*to Show Cause Why He Should Not Be Held in Contempt* (Doc. 299) and *Motion to Show Cause Why the Receiver Should Not Be Held in Contempt* (Doc. 315) are **DENIED.**

**V.    The Regalbuto Plaintiffs' Motion to Obtain Information from Dadante (Doc. 305).**

In their August 14, 2007 *Motion to Obtain Information from Dadante*, the Regalbuto Plaintiffs ask the Court to compel the Receiver to obtain the answers to three questions relating to Coffee King from Dadante.  On August 30, 2007, the Regalbuto Plaintiffs filed a notice to take the deposition of David Dadante.  (*See* Doc. 308).  Mr. Cheselka, on behalf of the Regalbuto Plaintiffs, and others deposed Dadante on September 14, 2007.  The transcript of Dadante's deposition was filed on October 15, 2007, and the Regalbuto Plaintiffs filed a Supplemental Position statement referring to the deposition on October 17, 2007.  The Regalbuto Plaintiffs surprisingly have not withdrawn their motion, but, given the substance of the Dadante deposition, the Court finds that their motion *Motion to Obtain Information from Dadante* has been mooted by the intervening deposition, and, accordingly, it is **DENIED**. [8]

**VI.    The Regalbuto Plaintiffs' Motion to Lift Stay on Discovery (Doc. 322).**

In their *Motion to Lift Stay on Discovery* (Doc. 322), the Regalbuto Plaintiffs' ask this Court to partially lift the discovery stay in place in this matter to permit them to depose David Dadante. According to their motion, the Regalbuto Plaintiffs wish to ask Dadante about various stock "dealings" he had with Stephen Glantz while Glantz was employed at various brokerages.

At the outset, the Court observes that counsel for the Regalbuto Plaintiffs deposed Dadante in this matter in September, 2007.  Prior to the deposition, the Court largely limited the questions to the pending issue of the legal status of the IPOF Fund.  In view of its recent finding that the IPOF

---

[8]        See n. 6.

16

Fund is a limited partnership, however, the Court finds that the discovery described by the Regalbuto Plaintiffs is the province of the Receiver.  To the extent the Regalbuto Plaintiffs feel they have valuable information or suggestions relating to the aforementioned matters, they should feel welcome to share that knowledge with counsel for the Receiver.  Accordingly, the Regalbuto Plaintiffs' *Motion to Lift Stay on Discovery* (Doc. 322) is **DENIED.**

## VII.    CONCLUSION

For the foregoing reasons: *The Regalbuto Plaintiffs' Motion for Further Accounting* (Doc. 294) is **GRANTED.**  *The Small Plaintiffs' Motion for Specified Accounting* (Doc. 296) is **DENIED**. *The Regalbuto Plaintiffs' Motion for Conference/Hearing* (Doc. 295); *The Regalbuto Plaintiffs' Motion to Remove Receiver for Cause and for Receiver to Show Cause Why He Should Not Be Held in Contempt* (Doc. 299); *The Regalbuto Plaintiffs' Motion to Obtain Information from Dadante* (Doc. 305); *The Regalbuto Plaintiffs' Motion to Show Cause Why the Receiver Should Not Be Held in Contempt* (Doc. 315); and *The Regalbuto Plaintiffs' Motion to Lift Stay on Discovery* (Doc. 322) are **DENIED**.

**IT IS SO ORDERED.**

s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated:  January 25, 2008**

17