**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHELDON GORDON, et al.** | : | **Case No.1:05CV2726** |
| **Plaintiff(s),** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **DAVID DADANTE, et al.** | : | **MEMORANDUM & ORDER** |
| **Defendant(s).** | : | |

## I.    INTRODUCTION

Before the Court is Mark Dottore's (the "Receiver") August 14, 2008 Motion for Order Approving Settlement and for Ancillary Orders (Doc. 375).  In his motion, the Receiver asks this Court to approve a settlement between the Receivership estate and McDonald Investments, Inc. n/k/a KeyBanc Capital Markets, Inc. ("McDonald"), to enter a bar order and an injunction, and to dismiss certain claims.  For the following reasons, the Receiver's motion is **GRANTED**.

## II.    DISCUSSION

This Court has previously noted that the instant litigation has a long and complicated history. The circumstances giving rise to this litigation, the distinct character and interests of each group of plaintiffs, and the relationship between the various defendants are discussed fully in this Court's prior orders.  For present purposes, however, it is primarily relevant to note that this Court previously appointed a Receiver in this case.  The Receiver's mandate is in part to obtain maximum value from the Receivership estate's assets held in various brokerage accounts.  These accounts contain an extremely large quantity of Innotrac stock, but *de minimus* other assets.  Additionally, these accounts also reflect substantial margin debt, which the receiver and others contend was incurred as part of

Mr. Dadante's fraudulent scheme.[1]  In these respects, the McDonald account is no exception and McDonald asserts a claim against the Innotrac stock it holds in order to satisfy the margin debt.

The Court today considers a settlement proposal which is the result of months of contentious negotiations between the Receiver and McDonald.  The essential terms of the settlement require McDonald to extinguish its margin debt and deliver Innotrac stock free and clear, in exchange for which the Receivership estate agrees that it will not pursue various claims against McDonald.  In particular:

(1) McDonald will deliver to the Receivership estate 128,934 shares of common stock of Innotrac Corporation currently held in an IPOF Fund brokerage account established at McDonald in the name of David Dadante;

(2) McDonald will eliminate all claims, liens or any security interest related to margin debt, and for which McDonald asserts a claim for satisfaction of margin debt in the amount of not less than $562,473.

(3) The Receiver, on behalf of the IPOF Fund and related entities, will release McDonald, its officers, directors, and employees from any potential claims it may have for, *inter alia*, violations of the antifraud provisions of the federal securities laws in connection with acts and transactions by which the Receiver believes the account was utilized as part of a market manipulation scheme orchestrated by Dadante.

Consummation of the settlement is conditioned upon this Court's entry of the Bar Order, Injunction and Dismissal of Claims attached to the proposed Settlement Agreement as Exhibit A (the "Bar Order").[2]

On August 19, 2008, the Court issued an Order permitting interested parties to file written

---

[1]Precisely which parties are liable for this fraud and what debts were incurred as a result of this fraud is the subject of much of the instant litigation.  There is little question, however, that a substantial fraud was perpetrated against the plaintiffs.

[2]Distribution of any portion of the stock and/or proceeds from the sale of the stock as settlement proceeds is conditioned upon the execution of a release by individual IPOF Fund investors who are determined to have a valid claim to them.

objections to the proposed settlement on or before August 29, 2008. (Doc. 378.) The Order permitted parties who filed written objections to address the Court during a September 4, 2008 fairness hearing. On August 29, 2008, the Small Plaintiffs filed a brief statement in support of the proposed settlement agreement and the Regalbuto Plaintiffs filed objections to the same. No other plaintiffs filed comments with the Court. On September 4, 2008, the Court held a fairness hearing during which it allowed parties the opportunity to address the Court on the subject of the proposed settlement.

**A.     The Receiver's Fairness Assessment**

The Receiver has represented to this Court that he carefully weighed the merits of the proposed Settlement Agreement. According to the Receiver, this proposal generates substantial value for the Receivership estate equal to or greater than the amount that would likely be generated through litigation with McDonald. The Receiver's motion seeking approval of the settlement is a relatively brief statement setting forth the terms of the agreement. (*See* Doc. 375.) The Receiver, however, explained to the Court that his considerations were similar to those he set forth in detail when he recommended the Ferris, Baker settlement. (*See* Doc. 337.) In other words, the Receiver assessed the potential risks and rewards of pursuing the IPOF Fund's claims against McDonald through litigation and balanced that assessment against the value of the proposed settlement. The critical considerations are: (1) IPOF Fund's potential claims against McDonald; (2) IPOF Fund's actual damages associated with any such claim; (3) IPOF Fund's chances of succeeding on its claims; and (4) the costs, in time and money, of pursuing IPOF Fund claims against McDonald to trial.

The Receiver asserts that, on behalf of IPOF Fund, he has potential claims against McDonald

-3-

under the federal securities laws and under certain state and common law theories.[3]  The primary

bases for the Receiver's claims against McDonald are grounded in section 10(b) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5).  These

provisions address manipulative or deceptive devices or contrivances in connection with the

purchase or sale of securities.  Rule 10b-5 specifically prohibits any act, practice or course of

business which operates or would operate as a fraud or deceit upon any person in connection with

such purchase or sale. The scope of these provisions has been broadly defined in the courts as

encompassing deceptive practices that coincide with any securities transaction.  *See Merrill Lynch,*

*Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006).  Under section 10(b) of the Securities

Exchange Act of 1934 and SEC Rule 10b-5, however, plaintiffs are limited to recovering their actual

damages.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 734 (1975).  For a claim based

on price manipulation, a purchaser is entitled to recover the difference between the price paid for a

security and its true value but for the manipulation.  *Affiliated Ute Citizens of Utah v. United States*,

406 U.S. 128, 154-56 (1972).

The Receiver does not believe that McDonald would be liable for substantial damages under

the securities laws.  Unlike other accounts at other brokerage firms involved in this litigation, only

*de minimus* transactions involving Innotrac occurred in the McDonald account. The Receiver

explained that the McDonald account was primarily used to receive and then hold Innotrac stock

(causing that account to incur substantial margin debt) as part of the overall fraudulent scheme.  The

Receiver's investigation determined that when Mr. Dadante attempted to purchase additional

---

[3]The Receiver alleges that IPOF Fund was the victim of a market manipulation of the price of Innotrac Corporation stock and that the account established by Dadante at McDonald was used in that fraudulent scheme.

-4-

Innotrac stock, McDonald prevented him from doing so.  (*See* Doc. 390 at 17-18.)  For this reason, the Receiver believes that the extent of McDonald's liability is somewhat speculative when compared to the other brokerage firms that have been involved in this litigation.  Whereas Mr. Dadante directly manipulated the price of Innotrac by trading in other brokerage accounts, he did not engage in any significant trading at McDonald.[4]

The Receiver has also assessed the  likelihood of success of any claims against McDonald, and the costs of pursuing any claims to trial.  He is mindful that McDonald has consistently denied liability for IPOF Fund losses caused by the David Dadante Ponzi scheme and, moreover, that McDonald has asserted its claim for over half a million dollars in margin debt.  While the Receiver believes that there is a meaningful chance that he would ultimately prevail in claims against McDonald arising out of the market manipulation of Innotrac stock, in practical terms he may be limited in any recovery to seeking to have the margin debt extinguished.  He has also concluded that the Receivership estate is unlikely to recover meaningful damages on claims against McDonald, because almost no Innotrac stock was purchased through McDonald.  While he has not calculated exact costs, he notes that litigation through trial would invariably be quite expensive, and must be weighed against the uncertainty of any meaningful outcome beyond that which is available now via the proposed settlement.  In sum, he has concluded that the most likely result of protracted litigation is for McDonald to extinguish the margin debt and return all Innotrac shares to the IPOF fund, but not to pay any additional damages – the very terms on which the parties have now proposed to settle.

**B.    The Positions of the Interested Parties**

---

[4]He did, however, cause a significant margin debt to be maintained at McDonald.  Thus, while an examination of the IPOF Fund and McDonald's records shows that 128,932 common shares of Innotrac are deposited at McDonald, McDonald also claims at least $562,473 of margin debt against that account.

Prior to a hearing in this matter, the Court invited any interested parties to file written comments, whether positive or negative, regarding the proposed settlement.  As noted previously, the Regalbuto Plaintiffs filed objections, whereas the Small Plaintiffs filed a statement in support of the settlement.  By their silence, other victims of the Dadante fraud have indicated an absence of objection and, hence, apparent deference to the Receiver's calculus relating to this settlement.

1.      **The Regalbuto Plaintiffs' Objections.**

The Regalbuto Plaintiffs objected to the proposed settlement on the grounds that: (1) the forgiveness of margin debt by McDonald confers no value on the Receivership Estate; (2) the Innotrac stock that would be provided by McDonald has no real value; and (3) the proposed settlement might result in adverse tax consequences.

a.      **Forgiveness of Margin Debt**

The Regalbuto Plaintiffs object to the Receiver's settlement with McDonald on the stated ground that, because McDonald violated a duty by accepting an illegally created margin debt, McDonald gives nothing of value by forgiving that debt.  The Regalbuto Plaintiffs do not explain their position nor present any authority or analysis in support of it.  The Court is satisfied that the Receiver has examined all possible bases for claims against McDonald on behalf of IPOF Fund and that he has concluded that elimination of any claim to margin debt in fact confers substantial value to the Receivership Estate.  Given the substantial actual value of the Innotrac stock,[5] receiving that stock free of any adverse claim asserted by McDonald is highly significant.

---

[5]The Value of the Innotrac Stock is discussed in the next section.  (*See also* Doc. 393.)

### b.    The Value of the Innotrac Stock

The Regalbuto plaintiffs have expressed the concern that no party would pay real value for the Innotrac common stock.  Innotrac stock is very thinly traded: one cannot sell more than a few hundred shares of Innotrac on the open market without seriously depressing the stock's value. During the September 4th hearing, the Regalbuto plaintiffs seriously questioned whether the Receiver could successfully obtain value for that stock: they were concerned that they would receive the stock from McDonald, only to "wind up [in] . . . a situation where the stock will be declared worth only pennies." (Doc. 390 at 48.)  At that hearing, however, the Regalbuto plaintiffs reaffirmed their earlier representation that if the estate could recover $3.00 or more in value for the Innotrac stock, the Regalbuto plaintiffs would withdraw their objections to settlements, like this one, which propose to trade inchoate claims for unencumbered shares of stock.

Fortunately for all involved parties, the Receiver's efforts have brought about a merger agreement that, when concluded, promises a return to the estate of well in excess of the $3.00 per share value these plaintiffs seek.  (Doc. 393.)  Given that the plaintiffs have repeatedly taken the position that any recovery with a value in excess of $3.00 per share would be both fair and adequate (*see* Doc. 393 at 4-5 (detailing the Regalbuto plaintiffs' hope to recover value of between $3 and $4 per share), the Court overrules as moot any objection on the basis that the Innotrac shares might not have real value.

### c.    Tax Consequences of the Settlement

Last, the Regalbuto plaintiffs object to the proposed settlement on the grounds that it is likely to have sever adverse tax consequences.  This concern arose from the belief that the stock was completely illiquid, yet was highly valuable on "paper."  The Regalbuto plaintiffs feared that the

proposed settlement would trigger a large gain in taxable assets even though the shares did not have real value.  The Court overrules this objection as moot because, as discussed above (*see also* Doc. 393), the shares have real and liquid value.

**2.      The Small Plaintiffs' Memorandum in Support.**

On August 28, 2008, the Small Plaintiffs filed a memorandum in support of the settlement between McDonald and the IPOF Fund entities.  (Doc. 381.)  In their brief filing, the Small Plaintiffs explain that they do not object to the settlement with McDonald.

**C.      The Court's Findings**

After considering the Receiver's fairness assessment, the parties' objections, and the recently announced settlement between the Receiver and Innotrac Corporation that involves the merger of Innotrac in which Innotrac shareholders would receive value in excess of $4 per share for all outstanding Innotrac stock (*see* Doc 393), the Court is persuaded that the McDonald settlement is indeed fair and equitable to the Receivership estate.  As previously discussed, any claims against McDonald are speculative, and there are no well-taken objections to this settlement.  Most importantly, the Court is persuaded that the most likely outcome of litigation would be the very settlement proposal before the Court today, but that such an outcome would come at a far greater cost to the estate.  As such, the Court finds that when considering all the aspects of the settlement, the objections and statements in support of the settlement, and the facts and circumstances unique to this matter, the Settlement Agreement, in its entirety, is reasonable.

As a final note, no party has objected to any of the Release conditions or the imposition of the Bar Order.  According to the Receiver, the Release and Bar Order were necessary conditions in securing the settlement, and the settlement would not stand in their absence.  After its own review

-8-

of the Release and Bar Order, the Court finds the conditions found therein to be both fair and fairly typical conditions to impose in exchange for settlement.  Entry of a bar order that is required by a proposed settlement agreement is within a court's authority and discretion.  *See In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996); *CFTC v. Equity Fin. Grp.*, 2007 U.S. Dist. LEXIS 53310 (D.N.J. 2007); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1431 (D.S.C. 1990).  Accordingly, the Court approves the Settlement Agreement and declines to require modification of any aspect of the Settlement Agreement, its attendant Releases, or the Bar Order.  Within seven (7) days of the date of this Order, the Court will enter the Bar Order, Injunction and Dismissal of Claims attached to the proposed settlement agreement as Exhibit A.

### III.    CONCLUSION

For the foregoing reasons, the Receiver's Motion for Order Approving Settlement and for Ancillary Orders (Doc. 337) is **GRANTED**.

IT IS SO ORDERED.

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

Dated: October 16, 2008