# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **SHELDON GORDON, et al.,** | : | Case No. 1:05-CV-2726 |
| Plaintiffs, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| **DAVID DADANTE, et al.,** | : | **MEMORANDUM & ORDER** |
| Defendants. | : | |

Before the Court is a Motion to Disqualify Attorney James G. Dawson. (Doc. 433.) For the reasons detailed below, this motion (Doc. 433) is **STAYED** pending Attorney Dawson's response to this order.

## BACKGROUND

On March 23, 2009 the Small Plaintiffs filed a motion to disqualify Attorney James Dawson. (Doc. 433.)[1] On April 6, 2009, the Objecting Plaintiffs filed a response to this motion. On April 15, 2009 (Doc. 436), the Small Plaintiffs filed a reply to that brief (Doc. 438). On June 26, 2009, the Court issued an Order outlining the history of this case. (Doc. 447.) The Court incorporates its June 26, 2009 Order by reference, including its description of Attorney Dawson's recent violation of three separate Court Orders.

On March 12, 2009, Attorney James G. Dawson filed his Notice of Appearance on behalf of the Objecting Plaintiffs. (Doc. 431.) Prior to Dawson's appearance, the Small Plaintiffs moved to disqualify the three prior attorneys who had undertaken the joint representation of Frank Regalbuto and the Objecting Plaintiffs. (*See* Small Plaintiffs' Br. of August 21, 2007

---

[1] The Court's June 24, 2009 Order (Doc. 447) defines the Parties in this action.

(Doc. 307) ("Motion to Disqualify Attorney Michael Cheselka"); Small Plaintiffs' Br. of August 11, 2008 (Doc. 373) ("Motion to Disqualify Attorney Michael Goldstein"); Small Plaintiffs Br. of September 20, 2008 (Doc. 400) ("Motion to Disqualify Attorney William Summers").)  The Court has not ruled on any of these motions, because the Objecting Plaintiffs fired the first two counsel prior to the Court having an opportunity to rule and the third of these counsel ultimately represented to the Court that he did not represent Frank Regalbuto. (*See* Objecting Plaintiffs' Br. of October 20, 2008 (Doc. 403) ("Due to clerical error, when undersigned counsel entered his appearance on behalf of the "[Objecting] Plaintiffs," Frank Regalbuto himself was unintentionally added to the list of represented clients as well.").)  Nevertheless, it has been clear for some time that, "absent some exception or circumstance of which this Court is unaware, it seems impossible for Frank Regalbuto to share representation with the remaining plaintiffs." (Order of June 6, 2007 at 18.)

The fundamental claims made by these motions, as well as the current one, are the same. They assert that Frank Regalbuto has, throughout the course of this litigation, claimed an interest in receivership assets that is separate and superior to the interest of the other investors in the Fund, including the other Objecting Plaintiffs.  In support of this contention, they note that Frank Regalbuto has sought to have the assets of the Fund placed under his control, previously authorized priority payments from the Fund to himself and certain family members that were not available to other investors, has taken the position that those partners in the Fund (including himself) who received fake dividend payments need neither disgorge nor be subject to an offset by virtue of those payments, and offered to settle objections to one of the Receiver's proposed settlements predicated, in part, on the dismissal of claims filed by the Small Plaintiffs against Frank Regalbuto personally.  (*See, e.g.*, Small Plaintiffs' Br. of March 23, 2009 at 3-4; Small Plaintiffs' Br. of September 20, 2008 Ex. 1.)  The Small Plaintiffs argue that such conflicts make

2

joint representation impossible under the model rules, or, at the very least, that various counsel has not obtained the necessary waiver for such conflicts required under the Ohio Rules of Professional Conduct.

Attorney Dawson, for his part, has represented to this Court through his initial notice of appearance that he does <u>not</u> represent Frank Regalbuto.  (*See* Notice of Appearance of James G. Dawson of March 12, 2009 (Doc. 431).)  This is, within the confines of this particular case, a highly material representation to the Court given the substantial briefing that has revolved around the relationship between Frank Regalbuto and the other Plaintiffs.  (*See, e.g.*, Small Plaintiffs' Br. of March 23, 2009 (memorializing various other motions to disqualify counsel for the Objecting Plaintiffs); Objecting Plaintiffs' Br. of October 30, 2008 (explaining that former counsel did not represent Frank Regalbuto)).  The Small Plaintiffs, however, have produced documentation purporting to show that Frank Regalbuto is actually <u>directing</u> Attorney Dawson's actions and have argued that Dawson has not had direct contact with those individuals he does claim to represent.  Attorney Dawson has not refuted those allegations, nor does he admit them directly.  Instead, he devotes his brief to arguing that there would be no conflict of interest (if he did represent Frank Regalbuto) and states that Frank Regalbuto "probably is" entitled to priority treatment.  In sum, then, although Attorney Dawson has represented that he does not represent Frank Regalbuto, the documentation produced by the Small Plaintiffs and the manner in which Dawson has responded to the Motion to Disqualify suggest otherwise.

## **APPLICABLE LAW**

### A.  Federal Courts Have a Responsibility to Regulate Attorney Conduct

It is clear that "[t]he power to disqualify an attorney from a case is 'incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession.'" *Yates v. Applied Performance Tech., Inc.*, 209 F.R.D. 143, 150 (S.D. Ohio 2002)

(*quoting Ex Parte Burr*, 9 Wheat. 529, 22 U.S. 529, 531 (1824)). District courts have wide discretion in determining whether an "actual or potential conflict of interest" warrants disqualification. *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995); *see also Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990) ("The court has broad discretion in determining whether counsel should be disqualified in ongoing litigation."); *accord Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) ("An order disqualifying or refusing to disqualify counsel will not be disturbed if the record reveals any sound basis for the district court's action."). A court may, indeed, disqualify an attorney *sua sponte*. *See Coaker v. Geon Co.*, 890 F.Supp. 693, 694 (N.D. Ohio 1995). Nevertheless, if before a court on motion, the "moving party bears the burden of establishing the need for disqualification." *Nilavar v. Mercy Health Sys.*, 143 F. Supp. 2d 909, 912 (S.D. Ohio 2001).

When considering the disqualification of an attorney, "the courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation." *Hamrick v. Union Twnshp, Ohio*, 81 F.Supp.2d 876, 878 (S.D. Ohio 2000) (*citing General Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704, 711 (6th Cir. 1982)). As two other courts have explained:

> On the one hand, because a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored. . . . At the same time, the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.

*Sabrix, Inc. v. Carolina Cas. Ins. Co.*, No. CV-02-1470, 2003 U.S. Dist. LEXIS 25515, at *2 (D. Or. July 23, 2003) (quoting *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914 (N.D. Cal. 2003)); *see also Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177, 183 (6th Cir. Ohio 2005) ("Courts must be vigilant in reviewing motions to disqualify counsel as the ability to deny one's opponent the services of capable counsel is a

4

potent weapon, that can be misused as a technique of harassment." (quotation omitted)).  It is clear that "disqualification of counsel … is a drastic measure which courts will not impose unless absolutely necessary."  *Gould,* 738 F. Supp. 1121, 1125.[2]  Disqualification should not, for example, be based on a mere technical violation of a disciplinary rule.  *See Sauer v. Xerox Corp.*, 85 F. Supp. 2d 198, 201-202 (W.D.N.Y. 2000).  Still, although a court must be on guard against abuse, it should "not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety … resolve all doubts in favor of disqualification."  *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 750 (D. Md. 1997); *see also Jamieson v. Slater*, No. 06-1524, 2006 U.S. Dist. LEXIS 86712, at *9 (D. Ariz. Nov. 27, 2006) ("Even though a high standard of proof is imposed … any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification." (quoting *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983)); *Dauro v. Allstate Ins. Co.*, No. 1:00-CV-138, 2003 U.S. Dist. LEXIS 17190, at *21 (S.D. Miss. Sept. 16, 2003) ("Although a party's right to counsel of her choice is important, it is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct." (citation omitted).).

### B.  Disqualification of an Attorney Whose Clients Have Conflicting Interests

The rule "against concurrent representation is based on the duty of undivided loyalty an attorney owes a client."  *In re CellCyte Genetic Corp. Sec. Litig.*, No. C-08-47, 2008 U.S. Dist. LEXIS 94761, at *9-10 (W.D. Wash. Nov. 20, 2008) (citation omitted); *see also Cincinnati Bell*

---

[2] *Gould* explicitly applied this statement to long-serving counsel.  Although the Court applies it here out of an abundance of caution given the circumstances surrounding this litigation, a court would be justified in applying a less stringent standard than that articulated in *Gould*, where, as here, counsel has served for a very short period of time.

*v. Anixter Bros.*, No. 1-93-0871, 1994 U.S. Dist. LEXIS 21012, at *7 (S.D. Ohio June 24, 1994); *cf. Cleveland Bar Ass'n v. Mishler*, 886 N.E.2d 818, 825 (Ohio 2008) ("[L]awyers are cautioned against engaging unaffiliated counsel without the client's consent. Such improprieties … may also impinge on standards demanding an attorney's undivided loyalty to the client."). Such a rule prevents "an honest practitioner from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent." *Smiley v. Office of Workers Compensation Programs*, 984 F.2d 278, 282 (9th Cir. 1993). The duty "to provide undivided loyalty to a client is paramount. Lawyers must avoid all actual and potential conflicts of interest so as not to dilute their independent loyalty to each client." *Disciplinary Counsel v. Jacobs*, 846 N.E.2d 1260, 1261 (Ohio 2006). While clients may consent to many types of conflicts, some types of concurrent representation present concerns too great for such consent. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) (Michigan law); *see also* OHIO RULE OF PROFESSIONAL CONDUCT 1.7(c).

To determine whether the instant situation warrants disqualification, this Court first looks to Ohio Rule of Professional Conduct 1.7. That Rule states:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
>> (1) the representation of that client will be directly adverse to another current client;
>>
>> (2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.
>
> (b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:
>
>> (1) the lawyer will be able to provide competent and diligent representation to each affected client;

6

> (2) each affected client gives informed consent, confirmed in writing;
>
> (3) the representation is not precluded by division (c) of this rule.
>
> (c) Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:
>
> > (1) the representation is prohibited by law;
> >
> > (2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

OHIO RULE OF PROFESSIONAL CONDUCT 1.7. Of particular relevance here, "[d]ivision (c)(2) does not address all nonconsentable conflicts. Some conflicts are nonconsentable because a lawyer cannot represent both clients competently and diligently or both clients cannot give informed consent." OFFICIAL COMMENT 38, PROF. COND. RULE 1.7.[3]

It has been said that courts should disqualify an attorney when it is not "obvious to the court" that "concurrent representation does not compromise the attorney's capacity to fully represent each party's interest." *Coaker v. Geon Co.*, 890 F.Supp. 693, 695 (N.D. Ohio 1995) (citing OHIO DISCIPLINARY CODE OF PROFESSIONAL RESPONSIBILITY § 5-105) (emphasis removed).[4] At the least, Courts should exercise their discretion to disqualify an attorney when there is a "substantial risk that the lawyer's ability to consider, recommend, or carry out an

---

[3] On this point, the responsive brief of the Objecting Plaintiffs misreads the Ohio Rules of Professional Conduct. It cites comments to Rule 1.7 used to determine when representation falls under the ambit of Rule 1.7(a)(1), but wholly ignores Rule 1.7(a)(2). (*See* Objecting Plaintiff's Br. of April 6, 2009 at 6 ("Comments 10 through 13 appended to Rule 1.7 address issues raised by this Motion to Disqualify. Those comments are entitled "Identifying Conflicts of Interest: Directly Adverse Representation.").) Contrary to the Objecting Plaintiffs' assertion, "directly adverse representation" is just one of the situations under which a conflict of interest can arise. *See* OHIO RULES OF PROFESSIONAL CONDUCT 1.7(a)(2); *see also Jacobs,* 846 N.E.2d at 1261 ("[A] lawyer's duty to provide undivided loyalty to a client is paramount. Lawyers must avoid all actual and potential conflicts of interest so as not to dilute their independent loyalty to each client." (citation omitted)).

[4] The Disciplinary Rules state that counsel should withdraw if it is not obvious to <u>counsel</u> that he or she can ethically undertake concurrent representation. *Coaker*, on the other hand, advocates that a federal court should disqualify counsel when it is not obvious to the <u>Court</u> that counsel can ethically undertake concurrent representation.

7

appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client." OHIO RULE OF PROFESSIONAL CONDUCT 1.7.  Finally, although courts in this district refer to the Ohio disciplinary rules for guidance, a federal court's ultimate disposition of such a motion is based on the exercise of its inherent supervisory authority. *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 308-309 (S.D.N.Y. 2006); *see also In re CellCyte Genetic Corp. Sec. Litig.,* 2008 U.S. Dist. LEXIS 94761, at *5.

## **ANALYSIS**

The factual underpinnings of these motions are not seriously disputed.  First, as discussed in the Court Order of June 24, 2009, the Regalbutos have admitted to paying themselves proceeds from the Fund that were not available to other investors.  (*See also* Order of June 6, 2007 at 11 ("Frank and Michael Regalbuto have admitted that they authorized several hundred thousand dollars of 'bonus' payments from the Fund to themselves.").)  Second, the most recent counsel for the Objecting Plaintiffs himself asserts that Frank Regalbuto "probably should" receive a priority interest.  (Objecting Plaintiffs' Br. of April 6, 2009 at 3 ("Frank Regalbuto has a constitutional right to assert whatever claims he wants.  If he believes that he should receive a larger proportionate distribution from this lawsuit (which he probably should) then he has that right to assert his position and to present said position to the Court.").[5]  The Court, further, has already observed that Frank Regalbuto has asserted a variety of priority interests in this litigation.  (Order of June 6, 2007 at 10 ("Frank Regalbuto individually claims that he has a

---

[5] Of course, Frank Regalbuto's position in and of itself, is not necessarily problematic – the Objecting Plaintiff's Counsel is correct that Frank Regalbuto is fully entitled to vigorously assert his rights in this lawsuit.  As discussed in the next section, the question, of course, is why the Objecting Plaintiffs' Counsel devotes a large portion of his brief in opposition to the Motion to Disqualify to arguments about the importance of the individual interests of Frank Regalbuto, who he claims not to represent.

8

priority claim to separate, special payments from the assets of the Receivership that could exceed millions of dollars."); *id*. at 18 ("Because he appears to believe he first should be paid a substantial portion of the assets of the Receivership … prior to any distributions to other plaintiffs, Frank Regalbuto is at odds with the remaining investors.").) Finally, the Court has reviewed a letter sent from Frank Regalbuto to the Receiver on October 8, 2008. (Small Plaintiffs' Br. of September 20, 2008 Ex. 1.)[6] In that letter, Frank Regalbuto asserts that the Objecting Plaintiffs will remove their objections to the McDonald Financial Settlement (discussed in the Court Order of June 24, 2009) if, among other conditions, the Small Plaintiffs drop their lawsuit against Frank Regalbuto personally.

Given these undisputed facts, counsel served with these various motions have provided responses that may be best described as creative. The first counsel faced with such a motion contended that Frank Regalbuto's assertion that he, individually, should control the assets of the Fund did not necessarily mean that he was asserting a priority interest over those assets. (Objecting Plaintiffs' Br. of September 5, 2007 at 4.) The next counsel to face a motion to disqualify responded simply that he was certain that Frank Regalbuto's interests did not conflict with the other Objecting Plaintiffs, although that counsel allowed that he had never actually spoken with some unknown number of the other Objecting Plaintiffs. (*See* Objecting Plaintiffs' Br. of August 25, 2008 at 3 (Doc. 380).) The third counsel faced with such a motion took a rather different tact and assured the Court that he did not actually represent Frank Regalbuto.[7]

---

[6] To the extent that the Objecting Plaintiffs might have had evidentiary objections to this, or other of the exhibits attached to the Small Plaintiffs' various briefs, none of the attorneys who has represented the Objecting Plaintiffs has ever raised such an objection and such objections are, accordingly, waived.

[7] The Court is, accordingly, troubled by a document attached to the Small Plaintiffs' current motion to disqualify, purportedly from Frank Regalbuto, asserting that Frank Regalbuto himself fired the same counsel who asserted that he did not represent Frank Regalbuto. (*See* Small Plaintiffs' Br. of March 23, 2009 at Ex A.) The Objecting Plaintiffs, for their part, in no

9

Finally, this instant brief in opposition (Doc. 436), as previously indicated, leaves untouched counsel's prior representation that he does not represent Frank Regalbuto, and simultaneously asserts that Frank Regalbuto "probably should" receive a larger "proportionate distribution" from this litigation.[8]

### A. No Attorney May Represent Both Frank Regalbuto and the Other Objecting Plaintiffs

In light of the above facts and law, the Court concludes that Frank Regalbuto or any other party who claims or might reasonably claim any priority interest in the assets of the Receivership Estate must have separate counsel from the other Objecting Plaintiffs.[9]  While the Court declines to adopt *Coaker*, the Court finds it dispositive under any standard it might reasonably apply that Frank Regalbuto asserted that the Objecting Plaintiffs would not withdraw their objection to the Receivers' settlement unless the Small Plaintiffs withdrew their claim of fraud against the Regalbutos.  There is, at the absolute minimum, the "substantial risk" that counsel's ability to "consider, recommend, or carry out an appropriate course of action" for the Objecting Plaintiffs will be "materially limited by" counsel's responsibilities to Frank Regalbuto.  So, too, particularly in light of the extremely prominent role of Frank Regalbuto in this litigation, including, for example, his assertion of individual control over counsel for the Objecting

---

way question the document.  The Court will not address this fully on its own terms, as that counsel is no longer before it.

[8] That brief does contain the single statement, offered without citation, that it is "false" to assert that Frank Regalbuto asserts a priority interest, but that unsupported statement appears contradicted by the brief itself.

[9] Any parties who seek joint representation must certify to the Court that they do not have, nor intend to raise, <u>any</u> claims of preference or priority against the Receivership Estate.  Further, any counsel who intends to undertake a joint representation must understand that it is his or her duty to understand and investigate any potential valid priority preference claims and explain to their client the ramifications of waiving such claim.  To the extent that parties submit such certification, their attorneys must also explain that such certification likely estopps any future claim.

Plaintiffs, the Court finds that this is a nonconsentable conflict where counsel could not "competently and diligently" represent both Frank Regalbuto and the other Objecting Plaintiffs.[10]

### B. It is Unclear Whether Attorney Dawson Represents Frank Regalbuto

It is a basic principle of civil litigation that an attorney cannot come into Court purporting to represent one litigant but actually reporting to another.[11]  As the Sixth Circuit has explained in a different context:

> While an attorney should represent his client with singular loyalty, that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court.  And when he departs from that standard in the conduct of a case he perpetrates fraud upon a court.

*Demjanjuk v. Petrovsky*, 10 F.3d 338, 352 (6th Cir. 1993).  Attorney Dawson is, therefore, **ORDERED** to **SHOW CAUSE** in writing within **TEN DAYS** why he should not be disqualified from representation of *any* party to this action.  Dawson must directly state whether he: (1) represents Frank Regalbuto; (2) reports to Frank Regalbuto or has reported to Frank Regalbuto at any time in the past; (3) has revealed the nature or substance of communications with any of his other clients to Frank Regalbuto; (4) has had individual conversations with each of the other clients who he represents; (5) has received payments from, or promises of payments from, Frank Regalbuto and; (5) must provide copies in camera of any signed letters of representation and billing invoices and/or evidence of payments received in connection with his

---

[10] The Court notes that, even if this were a consentable conflict, Attorney Dawson has not attempted to show "informed consent, confirmed in writing" as required by the Ohio Rules.  The lack of such consent makes particularly inapplicable counsel's references in the briefing on this issue to the Objecting Plaintiffs' right to select the representation of their choice – indeed, it appears that Frank Regalbuto himself may have actually hired this attorney and only then informed the other Objecting Plaintiffs of his decision. (Small Plaintiffs' Br. of March 23, 2009 Ex. B ("I [Frank Regalbuto] have let Bill Summers go… The new attorney is James Dawson.").)

[11] The Court observes that such an arrangement itself will usually indicate the most extreme conflict, for, absent such a conflict, there would seldom be a motivation for secrecy.

11

involvement in this matter. He must also explain why he: (1) chose to hide the fact of this representation (if it exists); and/or (2) did not initially respond to the Small Plaintiffs' documentation purporting to show that he reports to Frank Regalbuto.

Furthermore, in light of the exceedingly unusual circumstances of this litigation, any future counsel wishing to appear on behalf of any litigant or litigants is required to **CERTIFY** that counsel has <u>personally</u> communicated with each and every one of his clients prior to submitting any filing on their behalf.[12]  Briefs filed by non-compliant counsel will be **STRICKEN** sua sponte. The Receiver is **ORDERED** to serve a copy of this Order upon any new party to this action.

## CONCLUSION

For the aforementioned reasons, the Small Plaintiffs' Motion to Disqualify Counsel (Doc. 433) is **STAYED**, Attorney Dawson is **ORDERED** to **SHOW CAUSE** in writing within **TEN DAYS** why he should not be disqualified from representation of *any* party to this action, and the Receiver is **ORDERED** to serve a copy of this opinion upon any new party to this action.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: June 30, 2009**

---

[12] The need for <u>personal</u> contact between counsel and any putative client is also necessary because of prior claims that legal advice may have been provided in this case by an individual or individuals who are not licensed to provide such advice.

12