**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **SHELDON GORDON, et al.,** | : | **Case No. 1:05-CV-2726** |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **DAVID DADANTE, et al.,** | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

Before the Court is a Motion to Disqualify Attorney James G. Dawson. (Doc. 433.) For the reasons detailed below, this motion (Doc. 433) is **GRANTED**.

## I. BACKGROUND

On March 12, 2009, Attorney James G. Dawson filed his Notice of Appearance on behalf of the Objecting Plaintiffs. (Doc. 431.) On March 23, 2009 the Small Plaintiffs filed a motion to disqualify Attorney James Dawson ("Dawson"). (Doc. 433.)[1] On April 6, 2009, Dawson filed a

[1] The Court's June 26, 2009 Order defines the Parties in this action and outlines the history of this case. (*See* Doc. 447, also available at 2009 U.S. Dist. LEXIS 54147.) The Court incorporates that Order by reference, including its description of Dawson's recent violation of three separate Court Orders. (*See id.*)

Prior to Dawson's appearance, the Small Plaintiffs moved to disqualify the three prior attorneys who had undertaken the joint representation of Frank Regalbuto and the Objecting Plaintiffs. (*See* Small Plaintiffs' Br. of August 21, 2007 (Doc. 307) ("Motion to Disqualify Attorney Michael Cheselka"); Small Plaintiffs' Br. of August 11, 2008 (Doc. 373) ("Motion to Disqualify Attorney Michael Goldstein"); Small Plaintiffs Br. of September 20, 2008 (Doc. 400) ("Motion to Disqualify Attorney William Summers").) The Court has not ruled on any of these motions, because the Objecting Plaintiffs fired the first two counsel prior to the Court having an opportunity to rule and the third of these counsel ultimately represented to the Court that he did not represent Frank Regalbuto. (*See* Objecting Plaintiffs' Br. of October 20, 2008 (Doc. 403) ("Due to clerical error, when undersigned counsel entered his appearance on behalf of the "[Objecting] Plaintiffs," Frank Regalbuto himself was unintentionally added to the list of represented clients as well.").) Nevertheless, it has been clear for some time that, "absent some exception or circumstance of which

response to this motion. (Doc. 436.) On April 15, 2009, the Small Plaintiffs filed a reply to that brief. (Doc. 438) On June 19, 2009, the Small Plaintiffs filed supplementary material in support of their motion. (Doc. 446.)

On June 30, 2009, the Court stayed the Small Plaintiffs' motion and ordered Dawson to show cause why he should not be disqualified from representation of any party in this action. (Doc. 449.)[2] On July 10, 2009, Dawson filed a response to this Order. (Doc. 451.) On July 15, 2009, the Small Plaintiffs filed a reply to that response. (Doc. 453.)

**A. The Pending Motion**

The pending motion (Small Plaintiffs' Br. of March 23, 2009) makes two fundamental claims. First that this Court should not allow any attorney to represent Frank Regalbuto and other plaintiffs in this action. Second, that despite Dawson's assertions to the contrary, Dawson represents Frank Regalbuto.

As an initial matter, the Small Plaintiffs argue that Frank Regalbuto has claimed an interest in receivership assets that is separate and superior to the interest of the other investors in the Fund, including the other Objecting Plaintiffs. The Small Plaintiffs note that Frank Regalbuto has sought to have the assets of the Fund placed under his control, previously authorized priority payments from the Fund to himself and certain family members that were not available to other investors, has taken the position that those partners in the Fund (including himself) who received fake dividend payments need neither disgorge nor be subject to an offset by virtue of those payments, and offered to settle objections to one of the Receiver's proposed settlements predicated, in part, on the dismissal of claims filed by the Small Plaintiffs against Frank Regalbuto personally. (*See, e.g.*, Small Plaintiffs' Br. of March 23, 2009 at 3-4; Small Plaintiffs' Br. of September 20, 2008 Ex. 1.) The Small

---

this Court is unaware, it seems impossible for Frank Regalbuto to share representation with the remaining plaintiffs." (Order of June 6, 2007 at 18.)

[2] To ensure clarity, portions of the June 30, 2009 Order are repeated here.

Plaintiffs assert that such conflicts make joint representation impossible under the model rules, or, at the very least, that Dawson has not obtained the necessary waiver for such conflicts required under the Ohio Rules of Professional Conduct.

Attorney Dawson, for his part, has represented to this Court that he does not represent Frank Regalbuto. (*See* Notice of Appearance of James G. Dawson of March 12, 2009 (Doc. 431); Objecting Plaintiffs' Br. of July 10, 2009.)[3] The Small Plaintiffs, however, have produced documentation purporting to show that Frank Regalbuto is actually directing Attorney Dawson's actions and have argued that Dawson has not had direct contact with those individuals he does claim to represent.

**B. The June 30, 2009 Court Order**

On June 30, 2009, the Court concluded that no attorney could properly represent both Frank Regalbuto and other plaintiffs (*see* Order of June 30, 2009), because the factual underpinnings of the Small Plaintiffs' motion seeking to bar any attorney from representing both Frank Regalbuto and other plaintiffs (*see* Small Plaintiffs' Br. of March 23, 2009) were not seriously disputed.[4] Frank Regalbuto has paid himself proceeds from the Fund that were not available to other investors. (*See* Order of June 24, 2009; Order of June 6, 2007 at 11 ("Frank and Michael Regalbuto have admitted that they authorized several hundred thousand dollars of 'bonus' payments from the Fund to themselves.").) Dawson himself, moreover, asserts that Frank Regalbuto "probably should" receive a priority interest relative to other Plaintiffs. (Objecting Plaintiffs' Br. of April 6, 2009 at 3 ("Frank

[3] This is, within the confines of this particular case, a highly material representation to the Court given the substantial briefing that has revolved around the relationship between Frank Regalbuto and the other Plaintiffs. (*See, e.g.*, Small Plaintiffs' Br. of March 23, 2009 (memorializing various other motions to disqualify counsel for the Objecting Plaintiffs); Objecting Plaintiffs' Br. of October 30, 2008 (explaining that former counsel did not represent Frank Regalbuto)).

[4] Dawson's brief in opposition to the Motion to Disqualify (Objecting Plaintiffs' Br. of April 6, 2009) did contain the single statement, offered without citation, that it is "false" to claim that Frank Regalbuto asserts a priority interest, but that unsupported statement appeared contradicted by the brief itself.

Regalbuto has a constitutional right to assert whatever claims he wants. If he believes that he should receive a larger proportionate distribution from this lawsuit (which he probably should) then he has that right to assert his position and to present said position to the Court.").[5] So, too, it is well established that Frank Regalbuto has already asserted a variety of priority interests in this litigation. (Order of June 6, 2007 at 10 ("Frank Regalbuto individually claims that he has a priority claim to separate, special payments from the assets of the Receivership that could exceed millions of dollars."); *id*. at 18 ("Because he appears to believe he first should be paid a substantial portion of the assets of the Receivership . . . prior to any distributions to other plaintiffs, Frank Regalbuto is at odds with the remaining investors.").) Finally, the Court has reviewed a letter sent from Frank Regalbuto to the Receiver on October 8, 2008. (Small Plaintiffs' Br. of September 20, 2008 Ex. 1.) In that letter, Frank Regalbuto asserted that the Objecting Plaintiffs would remove their objections to the McDonald Financial Settlement (discussed in the Court Order of June 24, 2009) if, among other conditions, the Small Plaintiffs were to drop their pending lawsuit against Frank Regalbuto (*see Small v. Regalbuto*, No. 06-CV-1721 (N.D. Ohio)).[6] In light of these facts and the legal standard for attorney disqualification (discussed below), the Court held that no attorney could represent Frank Regalbuto and other plaintiffs in this action. (Order of June 30, 2009.)[7]

---

[5] Of course, Frank Regalbuto's position in and of itself, is not necessarily problematic – the Objecting Plaintiffs' Counsel is correct that Frank Regalbuto is fully entitled to vigorously assert his rights in this lawsuit. As discussed in the next section, the question, of course, is why the Objecting Plaintiffs' Counsel devotes a large portion of his briefing in opposition to the Motion to Disqualify to arguments about the importance of the individual interests of Frank Regalbuto, who he claims not to represent.

[6] To the extent that the Objecting Plaintiffs might have had evidentiary objections to this, or other of the exhibits attached to the Small Plaintiffs' various briefs, none of the attorneys who has represented the Objecting Plaintiffs has ever raised such an objection and such objections are, accordingly, waived.

[7] The Court also held that any parties who seek joint representation in the future must certify to the Court that they do not have, nor intend to raise, any claims of preference or priority against the Receivership Estate. (Order of June 30, 2009.) Further, the Court made clear that any counsel who intends to undertake a joint representation must understand that it is his or her duty to understand

The Court, however, stayed the Small Plaintiffs' motion to disqualify Dawson. (*Id*.) Although the evidence strongly indicated that Dawson represented Frank Regalbuto and that the Court would have been justified in disqualifying Dawson at that time, the Court concluded that it was the better practice to allow Dawson an additional opportunity to show cause why he should not be disqualified. (*Id*.)[8]

**C. Dawson's July 10, 2009 Response**

On July 10, 2009, Dawson submitted a brief to this Court asserting that he should not be disqualified because he does not represent Frank Regalbuto (Doc. 451 at 7 ("I do not represent Mr. Frank Regalbuto, Sr. in the subject case.")), although he does have conversations with him (*Id*. at 8 ("I have had lengthy discussions with Mr. Frank Regalbuto, Sr. relative to the facts of the case.")). In accordance with this Court's Show Cause Order, Dawson also submitted a copy of his bills for in camera review. (Doc. 450.)[9] Those bills were submitted on behalf of five individuals, including

---

and investigate any potential valid priority preference claims and explain to their client the ramifications of waiving such claim. (*Id*.) To the extent that parties submit such certification, the Court noted that attorneys must also explain that such certification likely estopps any future claim. (*Id*.)

[8] In Dawson's response to the Small Plaintiffs' motion (Objecting Plaintiffs' Br. of April 6, 2009), he did not choose to address the contention that he represented Frank Regalbuto directly. Instead, he devoted his brief to arguing that there would be no conflict of interest (if he did represent Frank Regalbuto) and states that Frank Regalbuto "probably should" be entitled to priority treatment. In sum, then, the Court could have properly disqualified Dawson based on the documentation produced by the Small Plaintiffs and the manner in which Dawson responded to their Motion to Disqualify.

[9] Dawson's submission was materially deficient in one critical respect: he did not include any signed letters of representation (or assert the non-existence of such letters), which he had been ordered to produce for in camera review. The Court does not rely on the absence of such letters in its analysis. Nevertheless, this deficiency would, by itself, justify disqualification on at least two independent bases. First, as discussed above, Dawson could have been properly disqualified prior to issuance of the Show Cause Order given that he had already had an opportunity to respond to the Small's motion for disqualification. Second, even if this had been Dawson's first opportunity to respond, once the Court issued its Show Cause Order, the Court could properly consider Dawson's failure to respond to a portion of that order. *See United States v. Nolen*, 472 F.3d 362, 372 (5th Cir. 2006) ("Once evidence of unethical conduct has been presented . . . the burden shifts to the attorney facing discipline, who must be given an opportunity to rebut or disprove that evidence. Only after

Frank Regalbuto. (*Id*.) So, too, those bills were each addressed to Frank Regalbuto. (*Id*.) In other words, although Dawson asserts that he does not represent Frank Regalbuto, he has "lengthy discussions" with Frank Regalbuto, submits all of his bills to Frank Regalbuto, and makes filings in court on behalf of Frank Regalbuto. (*See* Objecting Plaintiffs' Br. of July 10, 2009; Objecting Plaintiffs' in camera submission of July 10, 2009.)[10]

Dawson also argued that the Court's Show Cause Order "twice . . . intentionally [took Dawson] out of context and misquote[d]" him to make it appear as if he represented Frank Regalbuto. (Objecting Plaintiffs' Br. of July 10, 2009 at 2) (emphasis added). The Court's Show Cause Order had questioned the veracity of Dawson's claims not to represent Frank Regalbuto because the Court felt that Dawson made the type of arguments that would generally be made by an attorney who did represent Frank Regalbuto. The Court observed:

> Finally, this instant brief in opposition (Doc. 436), as previously indicated, leaves untouched counsel's prior representation that he does not represent Frank Regalbuto, and simultaneously asserts that Frank Regalbuto "probably should" receive a larger "proportionate distribution" from this litigation.

(Court Order of June 30, 2009 at 10.) The Court also quoted a longer section of Dawson's brief:

> Frank Regalbuto has a constitutional right to assert whatever claims he wants. If he believes that he should receive a larger proportionate distribution from this lawsuit (which he probably should) then he has that right to assert his position and to present said position to the Court."

(*Id*. at 8.) Dawson, again, contends that the two above sections of the Court's opinion are "out of context" and a "misquote." (Objecting Plaintiffs' Br. of July 10, 2009 at 2.) He asks the Court to consider the entirety of the following statement:

---

weighing all the evidence may the district court decide whether a sanction is warranted."); *cf. In re Bach*, No. 09-8516, 2009 U.S. App. LEXIS 10011, at *1 (D.C. Cir. May 7, 2009) (unpublished). ("Respondent has not responded to the order to show cause and, therefore, has not carried his burden. . . .").

[10] As noted in this Court's June 30, 2009 order, and as discussed below, Dawson also makes arguments that are the type of arguments the Court would expect him to make if he represented Frank Regalbuto.

> Like all individuals, Frank Regalbuto has a constitutional right to assert whatever claims he wants. If he believes that he should receive a larger proportionate distribution from this lawsuit (which he probably should) then he has that right to assert his position and to present said position to the Court.
>
> However, the [Objecting] Plaintiffs firmly believe that this Court will calculate any and all distributions to the Plaintiffs in a just, fair and equitable manner. Thus, Frank Regalbuto's claims, while fair and accurate, will probably not come to fruition.

(Objecting Plaintiffs' Br. of July 10, 2009 at 2-3 (quoting Objecting Plaintiffs' Br. of April 6, 2009 at 2-3).) Dawson does not explain why this second paragraph alters the context of the first.[11] Dawson, too, does not elucidate the manner in which he was "misquote[d]" or why he believes that the Court is acting "intentionally" against him.[12]

Dawson further argues that the Small Plaintiffs have failed to provide this Court "credible evidence [that Dawson represents Frank Regalbuto] to substantiate their maligning, mendacious claims" and that they have filed a "frivolous, unconscionable motion." (*Id*. at 5.) Dawson does not, however, attempt to refute, explain, or contextualize any of the evidence provided by the Small Plaintiffs, including, for example, evidence that Frank Regalbuto asserts that Dawson is his [Frank Regalbuto's] attorney. (*See* Small Plaintiffs' Br. of June 19, 2009 at 2.) Rather, Dawson claims that "there is no legal requirement to respond to the false, malicious claims of the Small Plaintiffs" and that "[t]heir allegations prove nothing." (Objecting Plaintiffs' Br. of July 10, 2009 at 9.)

---

[11] The Court, indeed, does not understand what the two sentence second paragraph might mean. The first sentence expresses faith in the Court to act in a "just, fair, and equitable" manner, the second sentence says that Frank Regalbuto's claims will be unsuccessful although they are "fair and accurate." The two sentences, then, seem logically inconsistent with each other.

[12] The Court is puzzled by Dawson's belief that its Show Cause Order reveals "a hidden prejudice of a serious nature." (Objecting Plaintiffs' Br. of July 10, 2009 at 2). The Court would have been within its discretion to disqualify Dawson absent any Show Cause Order at all, but chose to give Dawson and his clients every reasonable benefit of the doubt in the face of substantial evidence that Dawson was behaving unethically. This Court, moreover, recently exercised its discretion not to sanction Dawson despite his violation of three separate Court Orders, each of which explicitly warned of sanctions. (*See* Order of June 26, 2009 at 41 (Doc. 447) ("Attorney Dawson's filings represent examples of unreasonable conduct. To that end, more troubling than counsel's aforementioned failure to reference prior orders in his briefing, is new counsel's direct violation of three of those orders.").)

Dawson also argues that it would be particularly burdensome to his clients if he were disqualified, as it would:

> [Conceivably] take any new attorney to be retained by the [Objecting] Plaintiffs hundreds of hours to read all of the documents that have been filed, interview individuals knowledgeable about the facts of the case and perform required research to fully understand the various issues presented.

(*Id*. at 5.) The Court also suspects that such an investment of time is indeed required for an attorney to become fully acquainted with the facts of this litigation. Dawson's own bills on this case, however, do not reveal nearly this type of effort: he has spent no more than 50 hours on this type of activity.[13] Dawson also does not address the fact that his clients have themselves hired and fired no less than 10 separate attorneys during the pendency of this action.

These are not Dawson's only arguments, however. Dawson devotes a meaningful portion of his brief to asserting that it would not be a violation of the Rules of Professional Conduct for him to represent Frank Regalbuto. (*See id*. at 6 ("[S]aid claims [that Frank Regalbuto asserts a priority interest to other plaintiffs] fail to establish a conflict of interest for the following reasons."); *id*. at 6-7 ("Frank Regalbuto has a constitutional right to assert whatever claims he wants. . . . The [O]bjecting Plaintiffs cannot understand why this Court cannot understand this simple concept that clearly negates any alleged conflict of interest.").) He states, without explanation, that it is "false" that Frank Regalbuto "is claiming an interest in receivership assets that is separate and superior to the interest of the other investors" (*id*. at 6), notwithstanding the Court's prior determination that Frank Regalbuto indeed claims a priority interest to the other plaintiffs (Court Order of June 30, 2009 at 8-10 (noting that it is not "seriously disputed" that Frank Regalbuto claims a priority interest to the other plaintiffs and discussing that interest in depth). Dawson does not address the distinction

[13] 20 of those hours were related to preparation for a particular hearing before the Sixth Circuit after briefing had been concluded. It is likely, therefore, that it is more accurate to say that Dawson invested 30 hours in ascertaining the facts of this case.

between the Ohio Rules of Professional Conduct and the inherent power of a federal court, point this Court to any legal authority underlying his "simple concept" that the "Court cannot understand," acknowledge that the Court has already ruled that no attorney may represent Frank Regalbuto and other Plaintiffs, nor explain why he is making arguments about the propriety of his representation of Frank Regalbuto if he does not represent Frank Regalbuto.[14]

One final portion of Dawson's brief merits special mention. Although Dawson has had "lengthy conversations" with Frank Regalbuto, who he asserts not to represent, Dawson has not spoken with all of his putative clients. (Objecting Plaintiffs' Br. of July 10, 2009 at 10.) He does not attempt to explain in his own words why he considers it appropriate to undertake the representation of dozens of clients without speaking to them. Rather, he attaches the affidavit of Sheldon Gordon ("Gordon"), the initial named plaintiff in this action.[15] Gordon attests that Dawson speaks to him, and that he, in turn, "report[s] to members of [the Objecting Plaintiffs]." (*Id*. Ex. A

[14] The Court is baffled by Dawson's insult that "Frank Regalbuto has a constitutional right to assert whatever claims he wants. . . . The [O]bjecting Plaintiffs cannot understand why this Court cannot understand this simple concept that clearly negates any alleged conflict of interest." (*Id*. at 6-7.) As an initial matter, Dawson is simply incorrect as a matter of law and logic – that one party may have a right to assert a particular claim is not probative of whether that claim conflicts with claims of another party. Along these same lines, Dawson is plainly incorrect that a party "has a constitutional right to assert whatever claim [it] wants." *Cf. Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."); *Wardell v. Dep't of Corr.*, 72 Fed. Appx. 739 (10th Cir. 2003) ("[Plaintiff] alleged that defendants have denied him his constitutional right to access the courts. The district court [properly] concluded that [Plaintiff's] complaint was frivolous and dismissed it sua sponte. . . ."); *Witzkoske v. United States Postal Service*, 848 F.2d 70, 73 (5th Cir. 1988) ("[P]rocedural due process does not include the right to judicial review."); *Coffman v. Blake*, No. 06-1770, 2007 U.S. Dist. LEXIS 19176, at *5-6 (E.D. Mo. Mar. 19, 2007) ("[There is] no constitutional right of access to courts to prosecute frivolous or malicious actions." (citing *In re Tyler*, 839 F.2d 1290, 1292 (8th Cir. 1988)). More to the point, however, Dawson's *ad homium* attack upon the Court would be inappropriate under any set of circumstances.

[15] This affidavit was notarized by Dawson himself. The Court is concerned about the propriety of Dawson acting as notary for this particular affidavit, which is submitted to help Dawson show cause why he should not be disqualified, in part for perpetrating a fraud upon the court. The Court need not address this issue, however, because supporting declarations need not be in the form of sworn affidavits in this district.

("Affidavit of Sheldon Gordon") ¶ 7.) Gordon does not explain how frequently he "reports" to other Objecting Plaintiffs, or even whether he personally converses, or has ever conversed, with each of them. He also does not address the extent to which his conversations with Dawson include or are directed by Frank Regalbuto. Nothing in Gordon's affidavit explains why the arrangement he describes might be appropriate in a case that is not a class action and where the number of individual plaintiffs is not voluminous, and Dawson does not actually attempt to argue that it is.[16]

**D. The Small Plaintiffs' July 15, 2009 Reply**

On July 15, 2009, the Small Plaintiffs submitted a brief again urging the Court to disqualify Dawson. (*See* Small Plaintiffs' Br. of July 15, 2009.) They asserted that Dawson's brief failed to show cause why Dawson should not be disqualified. They argue:

> Dawson does not address the underlying problems with his representation that led the Court to this conclusion. Instead, he merely restates his unfounded arguments in an attempt to explain away the recognized conflict of interests. . . . Dawson's disregard for the importance of distinguishing between the parties' interests and representation by counsel in this case, despite the documented history of the significance of that issue, is further demonstrated by his troubling belief that he "**indirectly**, represents all Plaintiffs including Mr. Frank Regalbuto, Sr." and that his efforts "would be beneficial to all Plaintiffs including the Small Plaintiffs and Frank Regalbuto." (*Id*., emphasis in original.)
>
> Since Dawson does not even acknowledge the problems in his representation, he fails to candidly and substantively respond to the Court's inquiries regarding the extent of Regalbuto's involvement in the representation of the Objecting Plaintiffs. . . .
>
> Dawson . . . [concludes] that "there is no legal requirement to respond to the false, malicious claims of the Small Plaintiffs." (*Id.*) However, Dawson refuses to understand that the Motion to Disqualify and the Court's show cause order were based **solely** on the statements of Regalbuto and the attorneys purporting to represent the Objecting Plaintiffs. Neither the Small Plaintiffs nor their counsel made any independent factual statements in support of the disqualification.

[16] Dawson is, fundamentally, asserting that he was informed by Gordon that Gordon speaks for a large group of other individuals and that Dawson, consequently, represents those individuals. Because Dawson did not produce any signed letter of representation despite being ordered to do so, the Court must assume that Dawson does not have written evidence that the people he claims to represent are, in fact, his clients.

(*Id*. at 2-3) (emphasis in original). The Small Plaintiffs, in sum, argue that Dawson's brief fails to show cause why Dawson should not be disqualified.

**APPLICABLE LAW**

**A. Federal Courts Have a Responsibility to Regulate Attorney Conduct**

It is clear that "[t]he power to disqualify an attorney from a case is 'incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession.'" *Yates v. Applied Performance Tech., Inc.*, 209 F.R.D. 143, 150 (S.D. Ohio 2002) (*quoting Ex Parte Burr*, 9 Wheat. 529, 22 U.S. 529, 531 (1824)); *see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." (internal quotation omitted)); *In re BellSouth Corp.*, 334 F.3d 941, 951 (11th Cir. 2003) ("A court's inherent power to disqualify an attorney or otherwise sanction a party or attorney is rooted in concern for the integrity of the judiciary and the public's perception thereof."); *Field Turf USA, Inc. v. Sports Constr. Group, LLC*, No. 06-CV-2624, 2007 U.S. Dist. LEXIS 91238, at *17 (N.D. Ohio Dec. 12, 2007) ("The power to disqualify an attorney, or attorneys, from a case is incidental to all courts. . . ."). District courts have wide discretion in determining whether an "actual or potential conflict of interest" warrants disqualification. *United States v. Mays*, 69 F.3d 116, 121 (6th Cir. 1995); *see also Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp. 1121, 1124 (N.D. Ohio 1990) ("The court has broad discretion in determining whether counsel should be disqualified in ongoing litigation."); *accord Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) ("An order disqualifying or refusing to disqualify counsel will not be disturbed if the record reveals any sound basis for the district court's action.). A court may, indeed, disqualify an attorney *sua sponte*. *See Coaker v. Geon Co.*, 890 F.Supp. 693, 694 (N.D. Ohio 1995). Nevertheless, if before a court on

motion, the "moving party bears the burden of establishing the need for disqualification." *Nilavar v. Mercy Health Sys.*, 143 F. Supp. 2d 909, 912 (S.D. Ohio 2001).

When considering the disqualification of an attorney, "the courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation." *Hamrick v. Union Twnshp, Ohio*, 81 F.Supp. 2d 876, 878 (S.D. Ohio 2000) (*citing General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir. 1982)). As two other courts have explained:

> On the one hand, because a motion to disqualify is often tactically motivated, and can be disruptive to the litigation process, it is a drastic measure that is generally disfavored. . . . At the same time, the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.

*Sabrix, Inc. v. Carolina Cas. Ins. Co.*, No. CV-02-1470, 2003 U.S. Dist. LEXIS 25515, at *2 (D. Or. July 23, 2003) (quoting *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914 (N.D. Cal. 2003)); *see also Moses v. Sterling Commerce (Am.), Inc.*, 122 Fed. Appx. 177, 183 (6th Cir. Ohio 2005) ("Courts must be vigilant in reviewing motions to disqualify counsel as the ability to deny one's opponent the services of capable counsel is a potent weapon, that can be misused as a technique of harassment." (internal quotation omitted)). It is clear that "disqualification of counsel . . . is a drastic measure which courts will not impose unless absolutely necessary." *Gould*, 738 F. Supp. 1121, 1125.[17] Disqualification should not, for example, be based on a mere technical violation of a disciplinary rule. *See Sauer v. Xerox Corp.*, 85 F. Supp. 2d 198, 201-202 (W.D.N.Y. 2000). Still, although a court must be on guard against abuse, it should "not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over

[17] *Gould* explicitly applied this statement to long-serving counsel. Although the Court applies it here out of an abundance of caution, a court would be justified in applying a less stringent standard than that articulated in *Gould*, where, as here, counsel has served for a very short period of time.

the members of the bar and with a view of preventing the appearance of impropriety . . . resolve all doubts in favor of disqualification." *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 750 (D. Md. 1997); *see also Jamieson v. Slater*, No. 06-1524, 2006 U.S. Dist. LEXIS 86712, at *9 (D. Ariz. Nov. 27, 2006) ("Even though a high standard of proof is imposed . . . any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification." (quoting *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 257 (7th Cir. 1983)); *Dauro v. Allstate Ins. Co.*, No. 1:00-CV-138, 2003 U.S. Dist. LEXIS 17190, at *21 (S.D. Miss. Sept. 16, 2003) ("Although a party's right to counsel of her choice is important, it is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct." (citation omitted).).

**B. Disqualification of an Attorney Whose Clients Have Conflicting Interests**

The rule "against concurrent representation is based on the duty of undivided loyalty an attorney owes a client." *In re CellCyte Genetic Corp. Sec. Litig.*, No. C-08-47, 2008 U.S. Dist. LEXIS 94761, at *9-10 (W.D. Wash. Nov. 20, 2008) (citation omitted); *see also Cincinnati Bell v. Anixter Bros.*, No. 1-93-0871, 1994 U.S. Dist. LEXIS 21012, at *7 (S.D. Ohio June 24, 1994); *cf. Cleveland Bar Ass'n v. Mishler*, 886 N.E.2d 818, 825 (Ohio 2008) ("[L]awyers are cautioned against engaging unaffiliated counsel without the client's consent. Such improprieties . . . may also impinge on standards demanding an attorney's undivided loyalty to the client."). Such a rule prevents "an honest practitioner from having to choose between conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a client's rights to the fullest extent." *Smiley v. Office of Workers Compensation Programs*, 984 F.2d 278, 282 (9th Cir. 1993). The duty "to provide undivided loyalty to a client is paramount. Lawyers must avoid all actual and potential conflicts of interest so as not to dilute their independent loyalty to each client." *Disciplinary Counsel v. Jacobs*, 846 N.E.2d 1260, 1261 (Ohio 2006). While clients may consent to many types of conflicts, some

types of concurrent representation present concerns too great for such consent. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008) (Michigan law); *see also* OHIO RULE OF PROFESSIONAL CONDUCT 1.7(c).

To determine whether the instant situation warrants disqualification, this Court first looks to Ohio Rule of Professional Conduct 1.7. That Rule states:

> (a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
>
> > (1) the representation of that client will be directly adverse to another current client;
> >
> > (2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.
>
> (b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:
>
> > (1) the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) each affected client gives informed consent, confirmed in writing;
> >
> > (3) the representation is not precluded by division (c) of this rule.
>
> (c) Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:
>
> > (1) the representation is prohibited by law;
> >
> > (2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

OHIO RULE OF PROFESSIONAL CONDUCT 1.7. Of particular relevance here, "[d]ivision (c)(2) does not address all nonconsentable conflicts. Some conflicts are nonconsentable because a lawyer cannot represent both clients competently and diligently or both clients cannot give informed consent." OFFICIAL COMMENT 38, PROF. COND. RULE 1.7.

It has been said that courts should disqualify an attorney when it is not "obvious to the court" that "concurrent representation does not compromise the attorney's capacity to fully represent each

party's interest." *Coaker v. Geon Co.*, 890 F.Supp. 693, 695 (N.D. Ohio 1995) (citing OHIO DISCIPLINARY CODE OF PROFESSIONAL RESPONSIBILITY § 5-105) (emphasis removed).[18] At the least, Courts should exercise their discretion to disqualify an attorney when there is a "substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client." OHIO RULE OF PROFESSIONAL CONDUCT 1.7. Finally, although courts in this district refer to the Ohio disciplinary rules for guidance, a federal court's ultimate disposition of such a motion is based on the exercise of its inherent supervisory authority. *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 308-309 (S.D.N.Y. 2006); *see also In re CellCyte Genetic Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 94761, at *5.

**C. Disqualification of an Attorney Who is Not Forthright with the Court**

Legal precedent considering the disqualification of an attorney who has not been honest with the Court is, perhaps fortunately, somewhat sparse. Nonetheless, it is clear that a district court properly exercises its inherent power when it uses that power to disqualify an attorney who has made material misrepresentations to the Court. *See Field Turf*, 2007 U.S. Dist. LEXIS 91238, at *18 ("[T]he Court has scrutinized all of the evidence before it and is led to the inescapable conclusion that . . . disqualification of Attorney Lasko and the Lasko firm [is] warranted. At each stage of litigation. . . . Attorney Lasko and the Lasko firm have revealed only so much information as they deemed necessary, even after the Court made clear that it expected full candor and disclosure."); *see also Ward v. Nierlich*, No. 99-14227, 2008 U.S. Dist. LEXIS 61518, at *5 (S.D. Fla. July 25, 2008) ("On January 10, 2007, the District Court affirmed the Magistrate Judge's report and

[18] The Disciplinary Rules state that counsel should withdraw if it is not obvious to counsel that he or she can ethically undertake concurrent representation. *Coaker*, on the other hand, advocates that a federal court should disqualify counsel when it is not obvious to the court that counsel can ethically undertake concurrent representation.

recommendation that Rubin and Rubin [be] disqualified as Plaintiffs' counsel for committing fraud on the Court."); *cf. Cannon v. Cherry Hill Toyota, Inc.*, 190 F.R.D. 147, 162 (D.N.J. 1999) (declining to disqualify an attorney when no evidence indicated that the attorney had been dishonest with the court). Not every arguable misrepresentation merits the drastic sanction of disqualification, of course. This Court concludes, however, that disqualification is proper when an attorney's material misrepresentation is so substantial that it threatens the integrity of the judicial process or would serve to undermine public confidence in the fairness of judicial proceedings.

## II. ANALYSIS

The issue before the Court is not a close call. It is disingenuous for Dawson to claim that sending bills to an individual, engaging in long conversations with that individual about the progress of the case for which one is sending those bills, and filing a brief on behalf of that individual does not constitute representation. In accord with this Court's prior Order that no individual may represent Frank Regalbuto and other plaintiffs, Dawson is **DISQUALIFIED** from further participation in this action.[19]

The Court, assuredly, has additional concerns about Dawson's conduct in this case, some of which were first detailed in the Court's Orders of June 26, 2009 and June 30, 2009. These include:

- Acknowledgement that it would take hundreds of hours for an attorney to properly prepare to represent his putative former clients (Objecting Plaintiffs' Br. of July 10, 2009 at 5), while his bills indicate that only either 30 or 50 hours of preparation occurred, depending upon how they are read (Objecting Plaintiffs' in camera submission of July 10, 2009).
- Lack of full compliance with this Court's Show Cause Order, in particular, his failure to provide signed letters of representation to the Court. (*Compare* Court Order of June 30, 2009 *with* Objecting Plaintiffs' Br. of July 10, 2009 *and* Objecting Plaintiffs' in camera submission of July 10, 2009.)

[19] Even if it were possible for an attorney to represent both Frank Regalbuto and other Plaintiffs, the Court would still disqualify Dawson for his misrepresentations.

- *Ad hominum* attacks on the Court as ignorant and intentionally biased. (Objecting Plaintiffs Br. of July 10, 2009 at 2 ("The attorney for the Objecting Plaintiffs is mystified as to why this Court, not once but twice would intentionally take out of context and misquote what Attorney Dawson wrote. . . . (internal citation omitted)); *id*. at 3 ("[T]he Court's misquoting of Attorney Dawson clearly depicts a hidden prejudice of a serious nature."); *id*. at 7 ("The objecting Plaintiffs cannot understand why this Court cannot understand this simple concept. . . .").)
- Claim to represent individuals to whom he has never spoken (*id.* at 8 ("I have not had individual conversations with each of . . . clients (of this case) who I represent"), apparently without a professionally reasonable basis for doing so (*see id*.; *id*. at Ex. A).
- Violation of three separate Court Orders, at substantial cost to judicial resources. (*See* Court Order of June 26, 2009 at 41-43.)
- Potentially falling below the standard of care owed to his putative clients by asserting, and charging his clients for making, frivolous and non-meritorious arguments lacking legal support.[20]
- Contention that he "indirectly represent[s]" all plaintiffs in this action (Objecting Plaintiffs Br. of July 10, 2009 at 7 ("While I have not been retained to represent Mr. Regalbuto, I do, indirectly, represent all Plaintiffs. . . ."), notwithstanding the well-documented conflicts between Dawson's putative clients and the other plaintiffs.
- Unsupported attacks on other litigants; for example, incorrectly accusing the Small Plaintiffs of filing a "frivolous" and "vindictive" motion that consisted of "false, erroneous and malicious statements." (*Id*. at 2; *id*. at 5.)

[20] In particular: (1) Dawson's attempted appeal to the Sixth Circuit of a docket entry plainly marked "entered in error"; (2) Dawson pressing positions to the opposite of those already ruled upon by the Court, particularly the propriety of a single attorney representing Frank Regalbuto and other plaintiffs, without even acknowledging the Court's prior rulings; (3) Dawson's assertion that no conflict exists with Frank Regalbuto and the other plaintiffs because Frank Regalbuto has a right to assert whatever claims he wishes; (4) Dawson filing motions with the Court prior to fully learning the relevant facts underlying his motions; (5) Dawson filing essentially the same motion twice, without explanation; (6) Dawson devoting a substantial portion of his briefing to the arguments of an individual who he claims not to represent; (7) Dawson's objectively unreasonable reading of Ohio Rule of Professional Conduct 1.7, particularly his initial assertion that it barred his representation only of clients with directly adverse interests; and (8) Dawson's election not to address the legal standard previously set forth by the Court in his response to the Court's Show Cause Order.

## III. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** the Small Plaintiffs' Motion to Disqualify Attorney James G. Dawson. (Doc. 446.)

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: August 26, 2009**