UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| **SHELDON GORDON,** *et al.*, | : | Case No.  1:05-CV-2726 |
| **Plaintiffs,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **DAVID DADANTE,** *et al.*, | : | **MEMORANDUM & ORDER** |
| **Defendants.** | : | |

Before the Court is the Receiver's Notice of Determinations and Recommendation for Order on First Interim Cash Distribution.  (Doc. 488.)  In this notice, filed pursuant to this Court's Order of January 11, 2010 (*see* Doc. 480), the Receiver seeks permission to distribute certain funds to the Plaintiffs in this action.  The Receiver's Notice is not limited to this request, however.  For reasons that the Court will explain below, the Receiver has asked this Court to enter an injunction governing the use of the Court's July 7, 2006 Order (Doc. 114) authorizing certain payments to one of the Defendants in this action, H&R Block Financial Advisors ("H&R Block").[1]  H&R Block has filed an objection to this portion of the Receiver's Notice (Doc. 489), and the Court finds that objection well-taken.

Accordingly, the Court now enters an order **GRANTING** the Receiver's request to distribute funds (Doc. 488), but **DENYING** the Receiver's request for injunctive relief (*id.*).

---

[1] H&R Block is now known as Ameriprise Financial, Inc.  (*See* Doc. 489 at 1.)  To maintain consistency with this Court's past orders, and in keeping with the terminology employed by H&R Block in its briefing (*see id.*), the Court will continue to refer to this party as H&R Block.

## I. PROCEDURAL HISTORY

This case has a long and highly extensive procedural history, which was most recently summarized in the Court's June 26, 2009 and August 28, 2009 Orders. (Docs. 447, 458). Although a review of that history is necessary to fully understand the current order – for example, those orders identify the parties in this action – this Order incorporates that history by reference and limits its recitation of procedural history to those filings and orders immediately relevant to the current dispute.

On August 25, 2009, the Receiver asked this Court to approve a plan for the distribution of certain funds to the plaintiffs in this litigation. (Doc. 457.) Various parties filed responses to his motion (Docs. 461, 462, 464, 465, 467-1, 473-1, 476, 477), and, on November 10, 2009, the Court held a hearing to allow interested parties an additional opportunity to present their arguments.

On January 11, 2010, the Court granted the Receiver's motion with some modifications. (Doc. 480.)

On March 4, 2010, pursuant to the terms of the January 11, 2010 Order, the Receiver filed the Notice of Distribution currently before the Court. (Doc. 488.) The Receiver seeks to distribute four million dollars ($4,000,000) to the plaintiffs in this action, a request to which no party has objected. He also seeks a form of injunctive relief against H&R Block that would potentially impact H&R Block's appeal of this Court's January 11, 2010 Order (*see* Doc. 483), which H&R Block opposes (Doc. 489).

## II. LEGAL STANDARD

To the extent that the Receiver seeks to distribute funds, the Court considers that request under traditional principles of equity. *See SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 668 (6th Cir. 2001). The Court is afforded broad discretion in applying these principles. *United States SEC v. Infinity Group Co.*, 226 Fed. Appx. 217, 218 (3d Cir. 2007) ("District Courts have wide

2

equitable discretion in fashioning distribution plans in receivership proceedings . . . ." (citing *SEC v. Fischbach*, 133 F.3d 170, 175 (2d Cir. 1997) (additional citation omitted)); *SEC v. Amerifirst Funding, Inc.*, No. 3:07-CV-1188, 2008 U.S. Dist. LEXIS 20044, at *9 (N.D. Tex. Mar. 13, 2008) ("[T]he district court, acting as a court of equity, [is] afforded the discretion to determine the most equitable remedy." (quoting *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 332 (5th Cir. 2001))); *see also Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 298 (6th Cir. 2009). Of course, in exercising its discretion, this Court "must still provide the claimants with due process," although summary proceedings generally comport with this requirement so long as "summary procedures permit parties to present evidence when the facts are in dispute and to make arguments regarding those facts." *Basic Energy*, 273 F.3d at 668.

On the other hand, to the extent that the Receiver seeks injunctive relief, the Court applies a very different standard:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See*, *e.g.*, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987).

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[2]

---

[2] The application of this test assumes, of course, that the request for injunctive relief is properly before the Court in the first instance, which, as discussed below, is not the case here.

**III. DISCUSSION**

**A. The Receiver Shall Distribute $4,000,000 to the Plaintiffs**

In this case, disputes with the Receiver's proposed distribution mechanism were addressed when the Court considered his August 25, 2009 motion.  (*See* Doc. 480.)  The only issue currently before the Court, then, is the precise amount of the Receivership Estate that the Receiver shall allocate to the plaintiffs during this particular distribution.

The Receiver proposes that he allot four million dollars ($4,000,000) to the plaintiffs, leaving approximately two million dollars ($2,000,000) in liquid assets remaining with the Receivership Estate.  (Doc. 488.)  This is in addition to 4,321,771 shares of stock in Innotrac corporation and inchoate assets in the form of legal claims by the Receivership against various defendants.[3]  No party has objected to the Receiver's proposed allocation, and the Court independently concludes that it strikes a proper balance between compensating the victims of David Dadante's fraudulent Ponzi scheme to as great an extent as possible and ensuring that the Receivership Estate itself maintains liquidity.

The Court, accordingly, **GRANTS** the Receiver's request for permission to distribute four million dollars ($4,000,000) (Doc. 488) in a manner consistent with this Court's January 11, 2010 Order (Doc. 480).

**B. The Receiver's Request for Injunctive Relief is Improper**

The Receiver's Notice also seeks a form of injunctive relief.  In particular, the Receiver has asked this Court to hold that its July 7, 2006 Order (Doc. 114), in which the Court authorized the payment of certain funds to H&R Block, "constituted a permitted distribution from the Receivership Estate to H&R Block solely for the protection of the interests of [the] IPOF Fund and the

---

[3] The Receivership's Innotrac stock is valued at $6,396,221.08 as of 10:30am on March 22, 2010.  The stock has been worth more than double this at various times over the past year.

4

Receivership Estate . . . assets held by H&R Block under facts and circumstances then existing, and [that the July 7, 2006 Order may be used] for no other purpose" (Doc. 488). H&R Block has, as previously noted, objected to this request. (Doc. 489.)

### 1. Background

To understand the Receiver's somewhat atypical request, it is helpful to appreciate the current relationship between the Receiver and H&R Block:

> The Receiver is currently asserting various claims against H&R Block: he seeks both damages and a determination that H&R Block has no valid claim to IPOF Fund assets that H&R Block currently holds, or in which H&R Block has a security interest. In particular, H&R Block holds 604,396 shares of Innotrac Corporation ("Innotrac") stock as a security interest against margin debt accumulated by Dadante. H&R Block has not only denied liability, but also has asserted that the Receivership is liable for that margin debt, a contention that the Receivership denies. To paint these competing claims with a broad stroke, H&R Block contends that it is entitled to payment for the substantial margin debt incurred by Dadante ($975,905.42), whereas the Receiver argues that H&R Block is liable to the Receivership for $1,250,000 and that H&R Block must return the Innotrac shares on which it asserts a security interest.
>
> On February 5, 2007, H&R Block moved to stay proceedings in this Court in favor of arbitration. Although this Court declined to grant such a stay, H&R Block vigorously asserted its rights to arbitration and ultimately prevailed before the Sixth Circuit, which issued its mandate on December 9, 2008. Accordingly, H&R Block and the Receivership are now asserting their competing claims in FINRA arbitration.[4]

(Doc. 480 at 8-9.) These competing claims have many aspects to them, but one is particularly salient for present purposes: H&R Block asserts that it is entitled to recover certain margin debt accrued by the IPOF Fund.

H&R's success in pressing its claim is not assured: a former H&R Block employee, William H. Salem ("Salem"), has admitted to defrauding IPOF Fund investors by engaging in manipulative

---

[4] Earlier in the course of the Receivership litigation in this Court, H&R Block commenced its own arbitration case against the Receiver seeking a declaration of its claimed rights and alleged security interest in the assets held in the brokerage accounts, which today consist entirely of shares of common stock of Innotrac Corporation. That arbitration case was stayed by agreement, until it was eventually consolidated with the arbitration case brought by the Receiver. The Court understands that the arbitration case(s) is/are currently proceeding through normal prehearing processes and procedures.

and deceptive trading activity while at H&R Block.  In other words, H&R Block claims a right to this margin debt notwithstanding that it was created, at least in part, because of criminally fraudulent activity on the part of one of H&R Block's employees.

The uncertain basis for H&R Block's claim notwithstanding, H&R Block has argued that the Receiver should not be permitted to distribute funds to the plaintiffs in this action without first setting aside funds to pay H&R Block [in the event that H&R Block prevails on the claim that it is entitled to payment of the margin debt that one of its employees fraudulently created].  (*See* Doc. 461 at 2-4.)[5]  In its January 11, 2010 Order granting the Receiver's Motion to Distribute Funds, this Court rejected H&R Block's arguments.  (*See* Doc. 480 at 10-12.)  The Court's finding was based on a number of independently sufficient grounds, among them that H&R Block had not presented facts showing that it was likely to succeed before FINRA and that, consequently, H&R Block's claim that it was entitled to the margin debt was speculative.  (*Id*. at 11.)[6]

### 2. The Receiver's Request for Injunctive Relief

The Receiver has now asked the Court to prevent H&R Block from relying upon one of this Court's prior orders, issued July 7, 2006 (Doc. 114), in pressing its claim over the margin debt.  In that Order, the Court permitted the payment of certain cash proceeds to H&R Block to reduce the value of the margin debt held by H&R Block.  The Receiver wants to prevent H&R Block from relying upon that order to pursue its current claim for margin debt.  He argues that, because there was no indication that former H&R Block employee Salem had created the margin debt through fraudulent means at the time of that order, and certainly not a guilty plea by Salem to that effect, the

---

[5] Salem's fraudulent activities were responsible for the creation of this margin debt not only at H&R Block, but also at the brokerage firm where he worked prior to going to H&R Block, Advest, Inc.  When Salem left Advest for H&R Block, Dadante and Salem caused the transfer of that fraudulently created margin debt from Advest to H&R Block.  Salem then proceeded to fraudulently create yet more margin debt while at H&R Block.  H&R Block now claims a right to all of the fraudulently created margin debt.

[6] H&R Block has appealed this determination.  (*See* Doc. 483.)

Court should not allow H&R Block to argue that the July 7, 2006 Order has any type of preclusive effect on the validity of H&R Block's claim to that margin debt now that Salem's fraud has come to light.

In response, H&R Block argues that the Receiver's request is improper.  H&R Block makes a number of arguments, but the Court need only address one: H&R Block contends that the Receiver has requested injunctive relief without making a motion for such relief.  H&R Block is correct: the Receiver's request is out of rule, and the Court simply cannot consider it.  So, too, although H&R Block does not make this argument, the Court notes that the Receiver has not attempted to establish that he is entitled to injunctive relief under the appropriate four-factor test governing the issuance of such relief.  To issue an injunction in such circumstances would be an abuse of this Court's discretion, and the Court must **DENY** the Receiver's request.

### 3.  The Scope of the July 7, 2006 Order

Although sustaining H&R Block's objections to the request for injunctive relief, the Court notes that it is perplexed by the entirety of this particular dispute.  The Court's July 7, 2006 Order did not purport to adjudicate the propriety of H&R Block's current claim over the margin debt.  (*See* Doc. 114.)  First, in seeking the July 7, 2006 Order, H&R Block asserted that "under the present circumstances no level of investigation could possibly yield a result other than application of the funds to margin at [H&R Block]." (Doc. 110.)  Obviously, H&R Block did not contemplate Salem's fraud when it made that assertion, and neither did the Court.  Simply, the July 7, 2006 Order was issued well before either the parties or the Court were aware of the fact or scope of Salem's criminal activity relating to the margin debt upon which H&R Block seeks to collect.  The Court did not pass, nor could it have passed, judgment on the validity of any claims the parties might assert with respect to the margin debt at H&R Block in the face of Salem's admittedly criminal conduct.

7

At the time of the July 7, 2006 Order, moreover, both H&R Block and the Receiver agreed that a reduction of the margin debt and the interest accruing therein would best protect the fund from what were then unknown consequences. Thus, if H&R Block were to establish its entitlement to the margin debt without offset, any loss to the fund would be lessened by the early reduction of that debt, since the interest on the debt would grow at a slower rate. If, on the other hand, it turned out that H&R Block was not entitled to recoup the margin debt, or owed the fund sums even beyond that debt, H&R Block's value was sufficient to assure that the fund could recoup any monies owed, including those transferred from one H&R Block fund to another under the July 7, 2006 Order.

The July 7, 2006 Order meant exactly what it said: "permitting application of the cash proceeds . . . ultimately seeks further to protect the Plaintiffs' interests in attempting to recover their investments." (Doc. 114.) To the extent the parties believe that the Court's two-sentence order might have any particular additional meaning, they are mistaken. In particular, as noted, the Order did not find that H&R Block was entitled to recover its asserted claim on the margin debt accrued by Dadante. It concluded only that, in light of H&R Block's claim to the margin debt and the rate of interest accruing on that claim, permitting the payment of some of that margin debt, from a pool of money held by H&R Block itself, was the best way to protect the Plaintiffs' interest at that stage of the proceedings. This is a far cry from actually adjudicating H&R Block's claim to that debt.

## IV. CONCLUSION

For the aforementioned reasons, the Receiver's request to distribute funds is **GRANTED** (Doc. 488) and the Receiver's request for injunctive relief is **DENIED** (*id.*).

**IT IS SO ORDERED.**

<u>s/Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: April 6, 2010**